**Russel Milton WILLS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 21378.

United States Court of Appeals
Ninth Circuit.

Oct. 3, 1967.

---

Kenneth A. MacDonald, MacDonald, Hoague & Bayless, Seattle, Wash., for appellant.

Michael Swafford, Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge:

Appellant stands convicted of refusal to submit to induction into the Armed Forces in violation of 50 U.S.C.App. § 462 and 32 C.F.R. § 1632.14. He has taken this appeal from judgment.

The basis of his refusal to be inducted was his contention that he was classified I-A and summoned for induction because of his action in destroying his draft card as a protest against the Government's policies and actions with respect to Vietnam, and that his classification into I-A was void as a violation of his constitutional right to freedom of speech.

On October 15, 1965, appellant, a full-time student with a II-S deferment, wrote the following letter to his local draft board in Berkeley, California:

"This is to inform your office that 1, I have intentionally destroyed my draft card and will henceforth refuse to carry another. 2, I have signed the C.N.V.A. petition, with which I am sure you are familiar. 3, I will refuse to co-operate with your office in any manner whatsoever. If you wish to take any measures against me, you can contact me at the following address * * *.

"My reasons for these actions are purely patriotic. They may be found in the Declaration of Independence, The U. S. Constitution and the Nurenburg Judgment. I won't bore you with details since I presume that you have heard them often. History will judge both of us, and one will be declared an unintentional murderer. It will not be me."

On October 23, 1965, appellant was notified by his local board that he had been reclassified I-A. No reason for reclassification was given, although the

notice advised him of his right to a personal appearance and to an appeal, and also stated: "FOR INFORMATION AND ADVICE GO TO ANY LOCAL BOARD." Appellant did not request a personal appearance or take an appeal. On January 31, 1966, he was ordered to report for induction. On February 24, 1966, he refused induction.

## I. *Exhaustion of Administrative Remedies*

At the outset we are faced with the contention of the Government that appellant is foreclosed from attacking his reclassification here by reason of his failure to exhaust administrative remedies through the taking of an appeal within the Selective Service System. Such was the holding of the District Court. Although we affirm the judgment of conviction, we disagree with the District Court on the foregoing point.

In the first place, appellant's objection to his classification was not addressed to the area of administrative judgment. It did not pose a question upon which courts, bowing to special expertise, would regard the administrative determination as final, save only where basis in fact is lacking. His objection, founded upon a claim of constitutional right, was one on which courts have little reason to defer to administrative determination. The exhaustion rule loses much of its force in this area. Cf., Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 825 (2d Cir. 1967).

Further, the notice received by appellant on October 23 did not tell the whole story. In reclassifying him I-A, the local board had first proceeded (on October 21), pursuant to its regulations, 32 C.F.R. § 1642.4, to declare appellant a "delinquent" for failure to perform duties required of him by the Selective Service Law. This section provides that when a registrant is declared to be a delinquent the board shall mail him a delinquency notice, setting forth the duty he has failed to perform.

The board finally did mail appellant a notice of delinquency (dated October 21, 1965) on January 3, 1966. Notice thus was not received until long after the ten-day period for appeal from reclassification had expired. Appeal does not lie from a declaration of delinquency, but only from the reclassification that follows.

The District Court recognized that the reclassification was not in accordance with the procedure contemplated by the regulations. It stated, however:

> "The requirement [of notice] is to inform the defendant of the acts which resulted in his being declared delinquent and will result in his being I-A."

It found that defendant "knew full well why he was reclassified," and was in no way prejudiced by failure to receive his delinquency notice prior to reclassification.

We quite agree that appellant knew full well why he was being classified I-A. What he did not know was that this classification was based upon a declaration of delinquency. A "delinquency-I-A" status is substantially different from that of an ordinary I-A. Unless otherwise requested by the United States Attorney (§ 1642.13), the board must call I-A delinquents for induction before all others, even before volunteers (§ 1631.7). Notice of delinquency is, in substance, a preinduction notice.

As the District Court noted, appellant "was intentionally challenging his draft board to act," but he did not know, in time to preserve (through administrative appeal) his right to assert his constitutional claim, what course that action would take. Failure to give notice of delinquency prior to reclassification may have led appellant to believe that the board or the Government would respond to his challenge otherwise than by immediate induction: by imposing a criminal sanction, in response to which his constitutional claim might be asserted and under which administrative appeal

would have been irrelevant.[1] Knowledge of his delinquency status and impending induction would thus be relevant to appellant's decision whether to appeal, and the board's failure to disclose this fact at the proper time cannot be said to be without consequence to that decision.

Under the circumstances we reject the Government's contention that appellant is barred from attacking his reclassification through failure to exhaust administrative remedies.

## II.  *Validity of the Board's Action*

■ A. Appellant first attacks his reclassification as invalid for the reason we have already discussed, that it was contrary to regulations because it preceded the sending of a delinquency notice, relying in part on Knox v. United States, 200 F.2d 398 (9th Cir. 1952).

■ It is true that because of the very limited scope of judicial review of Selective Service decisions, see Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and the potential severity of the sanctions involved, courts have been particularly sensitive to procedural irregularities and possible abuses by local boards. We recognized in *Knox*, however, that irregularities or omissions which do not result in prejudice to the registrant are to be disregarded. 200 F.2d at 401.

We find no prejudice in the present context. The only consequence, as we have noted above, was that appellant lost the opportunity to secure administrative review of his constitutional claim. We cure that by entertaining the claim here. Thus we conclude that the board's

omission was not such as to invalidate the reclassification.

■ B. We proceed then to appellant's basic contention: that the act of destroying his draft card was protected symbolic speech of protest; that he has a constitutional right to protest; and that reclassification and induction as a sanction against protest cannot be permited to stand.

The draft board, however, took action not because appellant acted in protest but because his form of protest constituted an act of willful disobedience of the board's requirement that at all times he retain his draft card in his possession. 32 C.F.R. § 1617.1.

Appellant clearly would have been subject to declaration of delinquency under 32 C.F.R. § 1642.4 and reclassification under § 1642.12 for this violation. He insists, however, that it was for the destruction and not for failure to possess that the board acted. He points to the fact that the duty he was charged with failure to perform (as set forth in the board's tardy notice of delinquency) was "Destroyed his Registration Certificate." He refers us to Operations Bulletin No. 282, National Headquarters of the Selective Service System, which advised local boards of Public Law 89–152, 79 Stat. 586, amending § 12(b)(3) of the Universal Military Training and Service Act, 50 U.S.C.App. § 462(b)(3), to make it a criminal offense to knowingly mutilate or destroy a registration certificate. This bulletin advised local boards that when such violations are brought to their attention they should consider whether the registrant-viola-

---

1. Following receipt of his induction notice appellant sought conscientious-objector classification. This request was duly denied and no issue in this respect is presented here. In his letter seeking reclassification, however, appellant makes statements relevant to our problem. He wrote:

"As I saw it, two courses of action were then open to you. First, you could prosecute me under civil [*sic*] law for refusal to carry a draft card; I am thinking of the recently passed law imposing a $10,000 fine and/or a sentence of five years in jail, which, hopefully, will be eventually judged unconstitutional under Article Eight of the Amendments to the Constitution of the United States of America. Your second possible line of action, as I saw it, would be to induct me."

tors should be declared delinquent and their inductions accelerated.

 It is against Public Law 89–152 and its legislative history that appellant's principal attack is directed.[2] But Congress' preoccupation with card-burning, which appellant finds offensive, simply does not concern us here. It does not carry over from the legislative halls to infect and render equivocal action by an entirely independent body. Though Congress may have sought to distinguish them, the two offenses are in truth but one. Destruction is, in fact, no more than a willful and defiant refusal to possess. The card burners know this full well. The act of public destruction of a draft card would not have its dramatic impact as protest were it not also a demonstration of disobedience of the duty to possess and carry that card, for which the protestor is subject to punishment. Appellant in his letter to the board recognized that the two offenses are in fact one so far as the board is concerned. He wrote: "I have intentionally destroyed my draft card and will henceforth refuse to carry another." It was in response to this advice that the board acted.

We conclude that the reclassification and order to report for induction did not violate appellant's constitutional rights.

Affirmed.

2. Appellant would have us declare that Act an unconstitutional violation of free speech. He relies on O'Brien v. United States, 376 F.2d 538 (1st Cir. 1967), where it was stated:

"In singling out persons engaged in protest for special treatment the amendment strikes at the very core of what the First Amendment protects." Id. at 541.

But while O'Brien held the Act unconstitutional in purporting to impose special treatment on protestors, it recognized that draft-card destruction also constitutes a violation of the requirement to possess and is criminal in that respect. The court was concerned lest, in imposing sentence, the District Court may have been led into regarding destruction as a more serious violation warranting the imposition of greater penal sanctions. The case was remanded for reconsideration of sentence. The determination of guilt was not disturbed.

We do not reach the question of the Act's constitutionality. Appellant was not prosecuted under it. Accepting, arguendo, the O'Brien result, we are not here faced with the degrees of severity available to a sentencing court. The question here is not whether the board may impose a more severe sanction for destruction than for nondestructive refusal to possess, but whether it may impose the same sanction, a declaration of delinquency.