**UNITED STATES of America, Plaintiff,**

v.

**Robert Springer STEWART, Defendant.**

**Crim. No. 42821.**

United States District Court
N. D. California.

June 25, 1969.

Appeal Dismissed Feb. 13, 1970.
See 90 S.Ct. 810.

**30**

Jerrold M. Ladar, Asst. U. S. Atty., Chief of Criminal Division, and David P. Bancroft, Asst. U. S. Atty., for plaintiff.

Phillip B. Ziegler, Berkeley, Calif., for defendant.

## ORDER GRANTING MOTION TO DISMISS INDICTMENT

PECKHAM, District Judge.

Defendant is being prosecuted for refusal to submit to induction into the Armed Forces of the United States, a violation of 50 U.S.C. App. § 462. A pretrial conference was held pursuant to F. R.Crim.P. 17.1, and at that conference the Defendant made a motion to dismiss pursuant to F.R.Crim.P. 12.

The facts, which are apparent from the Selective Service file, are as follows: On February 20, 1968, Defendant allegedly surrendered his selective service cards at Local Board No. 50 in Oakland, California. He declined to make any statement at that time. On February 21, 1968, the Local Board mailed to the Defendant a delinquency warning. On April 10, 1968, the Local Board declared the registrant delinquent for failure to carry a valid registration card, and on April 11, 1968, the Local Board sent to the Defendant the SSS Form 304 (Delinquency Notice). On May 8, 1968, the Local Board reclassified the Defendant 1–A, and on May 9, 1968, the Board forwarded to him a Form 110 so advising him of that fact. On June 28, 1968, the Local Board mailed to the Defendant an order to report for induction.

Assuming for the purposes of this motion that the Defendant wilfully and knowingly refused to submit to induction, the above facts present a question of law which stated succinctly is: When a registrant validly possessing a II–S deferment deprives himself of possession of his classification or registration card as an act of protest, may the Board declare the registrant delinquent, classify him I–A and order him for priority induction? Present Selective Service regulations provide that a registrant must have in his possession a valid registration card and notice of classification (32 C.F.R. §§ 1617.1, 1623.5); that for failure to perform a duty required under the selective service law the Local Board may declare him delinquent (32 C.F.R. § 1642.4(a); that a delinquent may be classified or reclassified into class 1–A or 1–A–O (32 C.F.R. § 1642.12); and that such delinquents shall be subjected to priority induction (C.F.R. § 1631.7).

In the face of this impressive broadside of regulations the Defendant nevertheless contends that his reclassification was illegal under the authority of Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct.

414, 21 L.Ed.2d 402 (1968). Oestereich was a full time divinity student enjoying a IV–D exemption when, as a protest, he returned his draft cards to his Local Board. The Board declared him delinquent, classified him I–A, and ordered him for immediate induction. In overturning the action of the Board, the Supreme Court said:

Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption. The Solicitor General confesses error on the use by Selective Service of delinquency proceedings for that purpose.

We deal with conduct of a local Board that is basically lawless. It is no different in constitutional implications from a case where induction of an ordained minister or other clearly exempt person is ordered (a) to retaliate against the person because of his political views or (b) to bear down on him for his religious views or his racial attitudes or (c) to get him out of town so that the amorous interests of a Board member might be better served. * * * In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate.

\* \* \* \* \* \*

Since the exemption granted divinity students is plain and unequivocal and in no way contested here [footnote omitted], and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type.

The government relies on Anderson v. U. S., 6th Cir. #18976, April 11, 1969;

Breen v. Selective Service Local Board No. 16, 406 F.2d 636 (2d Cir.), cert. granted 394 U.S. 997, 89 S.Ct. 1592, 22 L.Ed.2d 775 (1969); Kolden v. Selective Service Board No. 4, 406 F.2d 631 (8th Cir. 1969); and Wills v. United States, 384 F.2d 943 (9th Cir. 1967). The *Wills* case is not persuasive authority because without discussion of the issue the court proceeded on the unarticulated premise that the delinquency regulations were valid with respect to men whom Congress has mandatorily placed beyond the reach of those required to serve. The Supreme Court in *Oestereich* has subsequently destroyed the vitality of that premise. The *Kolden* case is not authority for the government's position because that case dealt with a graduate student who turned in his draft cards. The court said:

Section 6(h) makes a distinction between deferments for undergraduate students and those for graduate students. The statute *requires* the President to provide for undergraduate deferments except in time of necessity, but only *authorizes* him to do so for graduate students. [*Kolden* court's emphasis]

\* \* \* \* \* \*

Thus, if appellant here had been an undergraduate student duly possessing a II–S classification who had been reclassified I–A for reasons other than ceasing to be a fulltime student in good standing, the case would be more closely analogous to *Oestereich's* situation. Indeed, if inference relevant to the instant case were to be drawn from *Kolden*, the inference would be that the legality of the Board action in the case pending before this Court is much more doubtful, if not clearly illegal. Finally, *Anderson* and *Breen*, both decisions by divided courts, are also inapposite because the question before the courts was whether the registrants are entitled to preinduction review of their contentions. The defendant in the instant case had made the Hobson's choice of accepting induction or facing a criminal charge and is raising his contention as a defense to a criminal prose-

cution, a method expressly approved by Congress in section 10(b) (3) of the Military Service Selective Service Act of 1967.

The reasoning of the *Breen* and *Anderson* courts in refusing pre-induction review is similar to the arguments advanced by the government in opposition to the defense raised to the present prosecution and should, therefore, be discussed. The major difference between the *Oestereich* case and the present case, and the difference which the government urges should lead to the opposite result, is that while a student preparing for the ministry in a qualified school is "exempt" from service under Section 6(g) of the Act, persons pursuing full-time courses of instruction at a college are statutorily entitled to a "deferment" "under such rules and regulations as he [the President] may prescribe." Section 6(h) (1), 50 U.S.C. App. § 456(h) (1). The government then argues that this language vests the President with discretion to promulgate delinquency regulations which can result in the loss of II–S status, even though the grounds of delinquency have no reasonable relationship to the merits of keeping the deferment. This position is untenable. Section 6(h) (1), after providing that "the President *shall,* under such rules and regulations as he may prescribe, provide for the deferment from training" [Emphasis added] of full time undergraduate students, goes on to say:

> Student deferments provided for under this paragraph may be substantially restricted or terminated by the President only upon a finding by him that the needs of the Armed Forces require such action.

There remains a hangnail argument upon which the *Breen* and *Anderson* courts placed much emphasis. The last two sentences of section 6(h) (1), 50 U.S.C. App. § 456(h) (1) provide:

> Any person who is in a deferred status under the provisions of subsection (i) of this section after attaining the nineteenth anniversary of the date

of his birth, or who requests and is granted a student deferment, under this paragraph, shall, upon the termination of such deferred status or deferment, and if qualified, be liable for induction as a registrant within the prime age group irrespective of his actual age, unless he is otherwise deferred under one of the exceptions specified in the preceding sentence. As used in this subsection, the term "prime age group" means the age group which has been designated by the President as the age group from which selections for induction into the Armed Forces are first to be made after delinquents and volunteers.

The government would escalate this fleeting reference to delinquency, the only reference to it in the entire Selective Service Act of 1967, into a *carte blanche* grant of administrative power to declare delinquent a mandatorily deferred registrant who in any manner transgresses any one the myriad regulations which may apply to him. A similar argument was unsuccessfully urged in *Oestereich*, and even the majority in the *Anderson* case hardly reaches a resounding conclusion to the contrary when they refer to the sentence in the statute by saying:

> This *seems* to us to be a Congressional imprimatur, albeit an abbreviated one, on the delinquency procedures established by regulation. [Emphasis added].

The Selective Service Act of 1967 is a clear Congressional mandate that the national interest requires deferment of qualified students. Kimball v. Selective Service Local Board No. 15, 283 F.Supp. 606 (S.D.N.Y.1968), *Kolden, supra, Breen, supra* (dissent of Feinberg, J.). Any rules or regulations promulgated by the President which substantially restrict or terminate such deferments must either be reflective of the needs of the armed forces or reasonably related to the qualifications of a registrant for the deferment. The President has made no finding that the pertinent delinquency regulations are required by

the needs of the armed services, and the requirement that a registrant carry his draft cards has no reasonable relationship to the student's academic qualifications. The *Anderson* court, by listing the requirement of possession with a number of other requirements which clearly do have a reasonable relationship to continued qualification, or to the Board's ability to determine continued qualification, (*e. g.*, the requirements that a person register, that a national guardsman serve satisfactorily, that a completed classification questionnaire must be returned, that the Board must be notified of changes in status and address, and that evidence of full-time student status be supplied to the Board), attempts to impart to the possession requirement a patina which it does not have. In *Oestereich* the Supreme Court held the requirement had no reasonable relationship to the continued qualification for a IV–D, and a reading of *O'Brien*, in which the legitimate goals of the possession requirement are discussed, leads one to conclude that the reasons underlying the possession requirement are equally applicable to a IV–D and a II–S. Nor does the *Anderson* court's distinction that a IV–D is "predetermined to be outside the system; a deferred person [*e. g.*, a II–S] is within the system" lead to a different result. It is very important that a person claiming an exemption follow regulations in order that the government not be unnecessarily deprived of manpower, while the mischief done by the failure of a temporarily deferred student to follow regulations is not as serious since such a person ultimately becomes liable for induction when he receives his baccalaureate or reaches the age of 24. Furthermore, a person entitled to an exemption is not "outside the system" because when the reason for the exemption no longer exists such a person becomes liable for service. Section 6(k), 50 U.S.C. App. § 456(k). Indeed, a person holding an exemption could also be prosecuted under 50 U.S.C. App. § 462 for failure to possess his cards.

For the foregoing reasons the principles of *Oesterich* control, and the reclassification and priority induction of an otherwise validly deferred student for failure to keep his draft cards in his possession is illegal.

Because it is not necessary to this decision, this Court is not in this opinion deciding the validity of the delinquency regulations as applied to a registrant otherwise validly classified I–A. Other statutes and considerations may come into play in such a case. United States v. Gutknecht, 406 F.2d 494, (8th Cir.), cert. granted 394 U.S. 997, 89 S.Ct. 1595, 22 L.Ed.2d 775 (1969). Since the question presented is merely the legality of the Board's procedure, it is also not necessary to express an opinion as to whether induction under these circumstances is "punishment." [1]

■ In passing it should also be noted that the Defendant did not appeal from the Board's action classifying him I–A. The government has not contended that this failure to exhaust administrative remedies would preclude the defendant from raising the illegality of the Board's action as a defense to a criminal prosecution. For several reasons it is unlikely that such a contention, if made, could prevail. The question presented is not one involving Board discretion, but is one involving a question of law upon which the Board has no particular expertise to which the Court should defer. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Wills, supra*. Furthermore, there is no allegation or evidence that the Defendant knew that the consequence of failure to exhaust might preclude him from raising

1. The tenor of "Local Board Memorandum 85," with its reference to reporting "flagrant" cases to the U. S. Attorney for prosecution, and the reference by the Supreme Court in *Oestereich* to local boards acting as "freewheeling agencies meting out their brand of justice in a vindictive manner" seem to indicate that at least under some circumstances induction can be punishment. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (Discussion of denaturalization as punishment).

the question as a defense to a criminal prosecution. Lockhart v. United States, 9th Cir., No. 21,311, October 23, 1968 (en banc hearing granted). Also, dispensing with the requirement does not result in judicial interruption of the administrative selection process since that process has been completed, nor would insistence on the requirement now result in agency correction of its mistake since the time for appeal has expired. *Lockhart, supra.*

The Motion to Dismiss is granted, and the indictment is ordered dismissed.