UNITED STATES of America ex rel. Reuben Joel SHIFFMAN, Petitioner,

v.

COMMANDING OFFICER, ARMED FORCES EXAMINING AND ENTRANCE STATION, N. Y., Respondent.

No. 68 Civ. 3176.

United States District Court
S. D. New York.

July 25, 1969.

Sanford M. Katz, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for respondent; Brian J. Gallagher, Asst. U. S. Atty., of counsel.

## OPINION

FREDERICK Van PELT BRYAN, District Judge:

Petitioner, Shiffman, has applied for a writ of habeas corpus directing his release from the United States Army on the ground that his induction into the armed services was unlawful. Shiffman was inducted into the Army on August 6, 1968, after being declared a delinquent and reclassified as I–A by his Local Selective Service Board.[1]

The not uncomplicated factual background of this application is as follows:

From 1962 until August 1967, Shiffman was classified II–S, first as an undergraduate and then as a graduate student. Upon completion of his gradute studies, he was reclassified I–A on August 8, 1967. Thereafter, on August 16, 1967, the Local Board sent him a current information questionnaire. The Board received the completed questionnaire and a letter from Shiffman on September 11, 1967. These communications advised the Board that Shiffman had been accepted as a VISTA volunteer, that he had begun his training on August 30, 1967, and that his current mailing address was 90 The Fenway, Boston, Massachusetts. In addition, Shiffman enclosed his I–A Notice of Classification (SSS Form 110) and stated that he wished to appeal this classification in light of his employment as a VISTA volunteer.

On September 11, 1967 the Board replied to Shiffman at his Boston address advising him that consideration of a request for a II–A occupational deferment must await a request from VISTA. The Board also returned the I–A Notice advising Shiffman that he was to sign it and carry it with him, "as in the past".

VISTA then wrote to the Board advising that Shiffman had been accepted on the VISTA program and had begun a six-week training program in Boston on August 30, 1967 and requesting a 14-month deferment. The letter was received by the Board on October 5, 1967.

On the basis of this request, the Local Board, on October 10, 1967, reclassified Shiffman II–A until October 1968. The same day, a Notice of Classification reflecting the granting of this occupational deferment was sent to Shiffman in Boston and a Classification Advice (SSS Form 111) advising of the II–A reclassification was mailed to VISTA.[2]

On October 16, 1967 Shiffman mailed his August 8, 1967 I–A Notice of Classification to the United States Attorney General. It is undisputed that this was done "for the sole purpose of expressing * * * dissent from the participation of the United States in the war in Vietnam."[3] As of the October 16th date, Shiffman was actually classified II–A but had not yet received his II–A Classification Notice. Instead, the II–A Notice which had been sent to him at the Boston address, where he was staying during his VISTA training, was returned to the Board on October 20 with the envelope marked "NOT AT 90 THE FENWAY". In fact, Shiffman had by this time completed the 6-week VISTA training program in Boston, and had gone to New York to begin his VISTA assign-

---

1. Pursuant to army orders, Shiffman has been assigned to the Armed Forces Examining and Entrance Station, 39 Whitehall Street, New York City, pending determination of this application.

2. VISTA forwarded the Form 111 to Shiffman. He received it on or about October 18, 1967. See Petition for Writ of Habeas Corpus ¶ 7.

3. Petition for Writ of Habeas Corpus ¶ 6.

ment there. The minutes of the Local Board of October 20, 1967 reflect the fact that the II–A Notice had been returned from Boston unclaimed.

On October 26, 1967, the clerk of the Local Board filed the following Report of Oral Information (SSS Form No. 119):

> "Mr. Ross, FBI agent, checked file of registrant this date and reported registrant had returned his Notice of Classification of I–A, dated 8–8–67, directly to the U.S. Atty General. He had evidently mailed the card in.
>
> "In view of L.B. Memo 85, file will be presented to the Board at their next meeting for further consideration."

Local Board Memorandum No. 85 was issued by Lt. Gen. Hershey, Director of Selective Service, on October 24, 1967, two days before this Form 119 report was filed, and had evidently just been received by the Local Board. Among other things, the memorandum directed that when a Local Board received a current Notice of Classification which had been abandoned by one of its registrants, it should declare the registrant delinquent for failure to have the card in his possession and reclassify him into a class available for service as a delinquent. If, on appeal, the registrant was retained in a class available for service and the delinquency had not been removed, the registrant should then be ordered to report for induction as a delinquent.

A supplementary letter from the Director of Selective Service, dated October

26, 1967, went further than the memorandum. It approved reclassification for protest demonstrations, even where there was no violation of the regulations and no delinquency declaration.[4] Reclassification in such circumstances has been held to be unauthorized and contrary to law. National Student Ass'n Inc. v. Hershey, 412 F.2d 1103 (D.C.Cir. 1969).[5]

When the Local Board next met on November 14, 1967, Shiffman was declared a delinquent and forthwith reclassified I–A. On November 16th a Notime of Delinquency, the new I–A Notice of Classification, and an Advice of Right to Personal Appearance and Appeal (Form 217) were mailed to him. These documents were sent both to the Boston address and to the New York VISTA office to which Shiffman was assigned. Shiffman received those sent to him in care of the New York VISTA office.

On receipt of these communications, Shiffman, having in his possession the employer's advice of his II–A classification, wrote to the Board on November 20, 1967, as follows:

> "I have not as a VISTA Volunteer found permanent residence in New York. I am currently staying at the above address [325 W. 100, New York, N.Y. 10025] and am receiving mail there. I will notify you of any change.
>
> "A letter is being sent from VISTA, Washington, explaining my current status as a VISTA Volunteer."

This letter reached the Board on November 24. Its Minutes of Action re-

---

4. The October 26th letter to the Local Boards stated in part:

"Demonstrations, when they have become illegal, have produced and will continue to produce much evidence that relates to the basis for classification and, in some instances, even to violation of the act and regulations. Any material of this nature received in national headquarters or in any other segment of the system should be sent to state directors for forwarding to appropriate local boards for their consideration.

"A local board, upon receipt of this information, may reopen the classification of the registrant, classify him anew, and if evidence of the violation

of the act and regulations is established, also to declare the registrant to be a delinquent and to process him accordingly."

5. Even where there is a violation of the regulations, it has been suggested that the Hershey letter "in effect invite[d] local boards to utilize delinquency reclassifictaion in a punitive fashion" in violation of the Statute and the Constitution. Solicitor General's Brief at 52–53, Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed. 2d 402 (1968).

See also Id. at 57.

flect the fact that a "change of address" was "received from registrant" but no action was taken on this letter.

On December 4, 1967 the Local Board received an appeal by VISTA from Shiffman's I–A reclassification on the sole ground that his work for VISTA was of prime importance to the national interest. A Report of Information form (SSS Form 119) was then prepared by the Clerk of the Board stating, among other things, that the FBI had reported on October 26th that Shiffman had returned his draft card to the Attorney General and that "At this time Mr. Shiffman was not aware that his deferment had been granted and was supposedly I–A, although VISTA was made aware of his classification, each time it was changed."

The Minutes of Action of the Local Board on December 12, 1967 stated: "File considered by Board. Decision not to reopen class but forward file to Appeal Board". On December 29th the Appeal Board retained Shiffman in the I–A delinquent reclassification and so notified Shiffman and VISTA.

On January 18, 1968, Shiffman wrote a confused letter to the Local Board claiming that he had rectified any delinquency and asking for an appeal if the delinquencies had not been corrected. The Local Board replied on January 26th, stating that his "file has been considered by the Board and it is their decision not to remove the delinquency." On the same day, the Board forwarded Shiffman's file to state headquarters for review, and on February 2, 1968 state headquarters advised the Board that in its opinion Shiffman had been properly processed and retained in Class I–A and that he should be processed for induction in the "regular manner".

On February 26, 1968, the Local Board ordered Shiffman to report for induction

in Florida on March 13, 1968. The term "DELINQUENT" was printed on the order for induction. A number of administrative postponements of induction followed.

Then, on April 29, 1968, Shiffman brought a preinduction civil suit in this district [6], but was unable to obtain a temporary restraining order halting his induction.[7] A temporary stay was granted by Mr. Justice Harlan, but the full Supreme Court denied Shiffman's application for a stay or injunctive relief.[8] Shiffman was inducted into the Army on August 6, 1968. Thereupon, he commenced the present proceeding challenging the legality of his induction.

### I.

Shiffman first urges that there was no basis in fact for the delinquency declaration by the Local Board and that therefore his reclassification as I–A and subsequent induction were unlawful.

The Minutes of Actions by the Local Board of November 14, 1967 (SSS Form 100, continued on SSS Form 99) contain the following entry: "File considered by Board. Declared Delinquent for Failure to have current SSS Form No. 110 (Notice of Classification) in his possession. Classified I–A." Two days later, a Delinquency Notice and a new I–A Classification Notice were sent to Shiffman. The Delinquency Notice stated that he was declared delinquent for "failure to have SSS Form 110 (Notice of Classification) dated August 8, 1967 in [his] possession" and for "failure to keep local board advised of the address where mail would reach [him] * * *."

A "delinquent" is defined in the regulations as "a person required to be registered under the selective service law who fails or neglects to perform any duty required of him under the provisions of the selective service law." 32 C.F.R. §

**6.** Shiffman v. Selective Service Local Board No. 5, New York, 68 Civ. 1740.

**7.** On April 29, 1968, Judge McGohey refused to issue a temporary restraining order. The Court of Appeals denied a writ of mandamus against Judge Mc-

Gohey and a motion for a stay of induction.

**8.** Shiffman v. Selective Service Local Board No. 5, 391 U.S. 930, 88 S.Ct. 1831, 20 L.Ed.2d 849 (1968).

1602.4. The regulations provide that "The term 'selective service law' includes Title I of the Military Selective Service Act of 1967, and all rules and regulations issued thereunder." 32 C.F.R. § 1602.10.

■ 32 C.F.R. § 1623.5 provides that, "Every person who has been classified by a local board must have in his personal possession at all times * * * a valid Notice of Classification (SSS Form No. 110) showing his current classification." The I–A certificate mailed by Shiffman to the Attorney General on October 16, 1967 was not current at that time since Shiffman had actually been classified II–A on October 10, 1967. Although 32 C.F.R. § 1623.5 does not expressly require the retention of a classification notice no longer current until a new one is received, this is implicit. A time interval must ordinarily elapse between reclassification of a registrant and actual receipt of his new card. Although during this interval some of the information on the certificate held by the registrant is no longer current, the card as it stands contains other material useful both to the registrant and the Selective Service System. Thus, the regulation sensibly construed requires continued possession of the card last current until receipt of the superseding one.

Annexed to the Notice of Classification is a card containing instructions to the registrant. The following language on the card makes explicit what is implicit in the regulation:

"This is your Notice of Classification, advising you of the determination of your selective service local board that you have been classified in accordance with Selective Service Regulations. The various classifications are described on the reverse side of this communication. *You are required to have a Notice of Classification in your personal possession.*

"When a subsequent Notice of Classification is received, you should destroy the one previously received, retaining only the latest." (Emphasis supplied).[9]

Instructions on the SSS forms, including Form 110, are incorporated by reference into the regulations by 32 C.F.R. § 1605.51.[10] Thus, a registrant who does not have any Notice of Classification in his possession may be declared a delinquent.

It is undisputed that Shiffman did not have any Notice of Classification in his personal possession on October 17, 1967 and therefore he was technically delinquent in this respect.

The Delinquency Notice also stated that Shiffman was found to be delinquent for failing to keep his Local Board advised of the address where mail would reach him.

The regulations provide that "It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him." 32 C.F.R. § 1641.3. The Notice of Classification states that a registrant is required "to notify [his] local board in writing within 10 days after it occurs, (1) of every change in [his address] * * *."

9. In addition, the Notice of Classification itself states:
"The law requires you to have this Notice in addition to your Registration Certificate in your personal possession at all times and to surrender it upon entering active duty in the Armed Forces."

10. Section 1606.51(a) of the Regulations states that:
"All forms and revisions thereof referred to in these or any new or additional regulations, or in any amendment to these or such new or additional regulations, and all forms and revisions thereof prescribed by the Director of Selective Service, shall be and become a part of these regulations in the same manner as if each form, each provision therein, and each revision thereof were set forth herein in full. Whenever in any form or in the instructions printed thereon, any person shall be instructed or required to perform any act in connection therewith, such person is hereby charged with the duty of promptly and completely complying with such instruction or requirement."

Pursuant to 32 C.F.R. § 1606.51(a) this requirement is likewise incorporated into the regulations. Since Shiffman failed to keep the Board notified of his current address over a period of about six weeks, he was also technically delinquent in this respect.

It should be noted, however, that the Minutes of Actions of the Board meeting at which Shiffman was declared delinquent and reclassified state as the only ground of delinquency "failure to have current SSS Form 110 (Notice of Classification) in his possession". The Board's simultaneous reclassification to I–A was made upon this declaration of delinquency.

The statement in the Delinquency Notice sent to Shiffman pursuant to 32 C.F.R. 1642.4(b), and signed only by the Clerk of the Board, that he was delinquent *both* for failure to keep the August 8th Notice of Classification in his possession and for failure to keep the Board advised of his address, was not a correct and accurate statement of the Board's action as reflected in its minutes. It was the finding of delinquency for failure to keep his Notice of Classification in possession which was the ground on which the Board reclassified him as I–A and nothing else. Since the only delinquency on which the Board acted was that relating to the Classification Notice, the second ground of delinquency stated in the Notice of Delinquency must be disregarded.

There is plainly a basis in fact for the finding of delinquency for Shiffman's failure to keep his August 8, 1967 I–A Notice of Classification in his personal possession.

## II

■ Shiffman's second contention is that the action of the Local Board in reclassifying him as I–A simultaneously with declaring him delinquent, and its failure to give him notice of delinquency before such reclassification took place violated the Selective Service regulations and were unlawful.

The pertinent regulations include the following:

"1642.4 Declaration of Delinquency status and removal therefrom.

(a) Whenever a registrant has failed to perform any duty or duties required of him under the selective service law other than the duty to comply with an Order to Report for Induction (SSS Form No. 252) or the duty to comply with an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153), the local board *may declare him to be a delinquent.*

(b) When the local board declares a registrant to be a delinquent, it shall enter a record of such action and the date thereof on the registrant's Classification Questionnaire (SSS Form 100) and shall complete a Delinquency Notice (SSS Form No. 304), in duplicate, setting forth the duty or duties which the registrant has failed to perform. The local board shall mail the original to the registrant at his last known address and file the copy in his Cover Sheet (SSS Form No. 101).

(c) A registrant who has been declared to be a delinquent may be removed from that status by the local board at any time. When the local board removes a registrant from delinquency status, it shall enter a record of such action and the date thereof on the registrant's Classification Questionnaire (SSS Form No. 100) and shall advise the registrant of such removal by letter a copy of which shall be filed in his Cover Sheet (SSS Form No. 101)." (Emphasis Supplied)

"§ 1642.10. Restriction on classification and induction of delinquents.

No delinquent registrant shall be placed in Class I–A * * * under the provisions of § 1642.12 or shall be ordered to report for induction under the provisions of § 1642.13 or § 1642.7 of this chapter, * * * *unless the local board has declared him to be a delinquent in accordance with the provisions of § 1642.4 and thereafter*

*has not removed him such delinquency status."* (Emphasis supplied)

The Delinquency Notice sent to the registrant advises him:

"(2) You are hereby directed to report to this local board immediately in person or by mail, or to take this notice to the local board nearest you *for advice as to what you should do.*

"(3) Your wilful failure to perform the foregoing duty or duties is a violation of the Universal Military Training and Service Act, as amended, which is punishable by imprisonment for as much as 5 years or a fine of as much as $10,000 or both such fine and imprisonment. *You may be classified in Class I–A as a delinquent and ordered to report for induction."* (Emphasis supplied) [11]

When the applicable provisions of the regulations and the instructions contained in the Delinquency Notice are read together, as they must be under 32 C.F.R. § 1606.51, it becomes plain that the procedures with respect to determination of delinquency and those with respect to reclassification of delinquents are two separate and distinct steps which cannot be taken at the same time.

Section 1642.4, entitled "Declaration of Delinquency Status and Removal Therefrom", provides for a declaration of delinquency by the Local Board and requires that a delinquency notice be sent to the registrant advising of the duties he has failed to perform. It further provides that a registrant declared delinquent may be removed from delinquency status by the Local Board. The delin-

quency notice warns the registrant that he "may" be reclassified I–A and ordered to report for induction. It directs him to communicate with the Local Board for advice as to what he should do.

Reclassification of delinquents, on the other hand, is covered in a series of separate sections under the heading "Classification and Induction of Delinquents" following the section dealing with "Declaration and Notice of Delinquency". Section 1642.10 under that heading, entitled "Restriction on Classification and Induction of Delinquents", provides that no reclassification of a delinquent to I–A shall take place "unless the Local Board has declared him to be a delinquent in accordance with the provisions of § 1642.4 and thereafter has not removed him from such delinquency status." [12]

Thus, the regulations contemplate that two distinct and separate steps be taken by the Board. First, the registrant who is declared delinquent must be given an opportunity to respond to the Notice of Delinquency and to show, if he can, that no delinquency did in fact exist, or if delinquency did exist, that it was due to circumstances beyond his control, or to take reasonable steps to cure the dereliction. It is in the light of the registrant's response to the Delinquency Notice that the Local Board determines whether or not to remove him from delinquency status. [13]

Plainly a registrant receiving a Delinquency Notice must be allowed a reasonable time within which to respond to the Notice and present such facts and

11. It may be noted that in some instances delinquency warnings or pre-delinquency notices have been utilized. See Ginger, Minimum Due Process Standards in Selective Service Cases—Part I, 17 Hastings L.J. 1313, 1340 (1968).

12. There is no appeal from the Declaration and Notice of Delinquency or from the Local Board's refusal to remove from delinquent status. § 1642.14, under the heading "Classification and Induction of Delinquents" and entitled "Personal Appearance, Reopening and Appeal", pro-

vides that a delinquent reclassified I–A may request a personal appearance before the Local Board; his reclassification may be reopened by the Board at any time before induction and he may take an appeal from his reclassification.

13. The Solicitor General has agreed that some period of time should elapse between the sending of a Notice of Delinquency and a Notice of Classification. See Brief for Solicitor General at 51 n. 24, Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

circumstances to the Board as he deems will bear on the question of whether he should be removed from delinquency status.

It is only after such an opportunity has been given to the registrant that the Board may determine whether or not reclassification is appropriate. Unless such a time interval is allowed for the registrant to respond to the Delinquency Notice and for the Board to act on his response, no effect would be given to the specific language of § 1642.10 that "no delinquent registrant shall be placed in Class I–A" unless there has been a delinquency declaration "in accordance with the provisions of section 1642.4 and [the Local Board] *thereafter* has not removed him from such delinquency status."

Moreover, basic considerations of fairness and common sense dictate that if there be any ambiguity in the delinquency regulations they should be construed to require notice of delinquency and opportunity to respond before reclassification.

It is plain that the sanction which may be imposed for delinquency is very heavy. A registrant reclassified I–A for delinquency not only loses his deferment but is placed at the top of the list on order of call even before volunteers. He is liable for immediate induction and loses his regular turn for induction among other I–A registrants. 32 C.F.R. § 1631.7.

There are no degrees of delinquency. On the face of the regulations the registrant may be reclassified as a I–A delinquent regardless, for example, of extreme hardship on dependents or whether he is engaged in work deemed of importance in the national interest and irrespective of whether the delinquency is willful or inadvertent The regulations provide no standards for the guidance of Local Boards in the whole area of delinquency declaration, removal from de-

linquency, reclassification and reopening or for Appeal Boards either.

Congress has declared as a matter of national policy that service in the armed forces is to "be shared generally, in accordance with a system of selection which is fair and just * * *". Selective Service Act of 1967, 50 U.S.C.App. § 451 (c). Plainly, the notice of delinquency required by the regulations means fair and reasonable notice. Cf. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). There can be such notice only if an opportunity is given to the registrant to respond and the Board is given an opportunity to consider the response before the further drastic step of reclassification is taken.

Thus, there is every reason to construe these regulations as requiring a reasonable time interval between the Notice of Delinquency and reclassification and notice thereof.[14] In the case at bar, these provisions of the regulations were totally disregarded by the Local Board when it simultaneously declared Shiffman delinquent and reclassified him as a I–A delinquent. I hold that the action of the Board in so doing was in violation of the Selective Service regulations.

### III.

There remains the question of whether the action of the Local Board in reclassifying Shiffman as a I–A delinquent in violation of Selective Service regulations is invalid and renders his induction into the Army unlawful.

The courts have long held that "failure to accord a registrant the procedural rights provided by the Regulations invalidates the action of the draft Board." Knox v. United States, 200 F.2d 398 (9th Cir. 1952). Among the departures from established procedures that have been held to have this effect are refusal to reopen a registrant's classification,

---

14. It may well be that if the regulations were interpreted as permitting reclassification without opportunity to respond to notice of delinquency, there would be a denial of constitutional due process. However, it is unnecessary to reach that question here.

when a prima facie case for reclassification is presented[15], failure of local board to consider whether or not to reopen a classification[16], refusal to give a registrant a CO form when he requested it the day before he was to be inducted[17] and disregard of the requirement that a quorum, as defined in the regulations, decide questions of classification.[18]

This principle applies even where the administrative action is that of the military authorities, rather than of the Selective Service boards. See, e. g., Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968). Thus, in Smith v. Resor, supra, involving a member of an Army reserve unit called to active duty, the Court of Appeals for this circuit said: "Our reluctance * * * to review discretionary military orders does not imply that any action by the Army, even one violative of its own regulations, is beyond the reach of the courts. See Hammond v. Lenfest, 398 F.2d 705, 710 (2d Cir. 1968). Although the courts have declined to review the merits of decisions made within the area of discretion delegated to administrative agencies they have insisted that where the agencies have laid down their own procedures and regulations, those procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved." 406 F.2d at 145.

■ These cases are in accord with the general rule that where administrative action affects substantial individual interests an administrative agency is required to follow its established procedures even if they are not otherwise required by statute or by the Constitution. See, e. g., Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United

States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The question here then is whether the Board's violation of the regulations had a substantial impact upon Shiffman's rights.

Respondent urges that, even assuming there was a violation of the regulations by the Board in this case, the violation did not prejudice Shiffman's rights in any way. In support of this contention, respondent relies principally upon Wills v. United States, 384 F.2d 943 (9th Cir. 1967), cert. denied, 392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366, reh. den., 393 U.S. 898, 89 S.Ct. 66, 21 L.Ed.2d 185 (1968).

*Wills* was an appeal from a conviction for refusal to submit to induction into the Armed forces Appellant, a student with a II–S deferment, had written his draft board informing it, among other things, that he had intentionally destroyed his draft card, that he would refuse to carry another and that he refused to cooperate with the Board in any manner whatsoever, all as a matter of protest. The Board reclassified appellant as I–A and he was so notified with advice as to his right to appeal. He took no appeal. However, the Board did not send him a notice that it had declared him a delinquent pursuant to 32 C.F.R. § 1642.4 until long after the period for appeal from the reclassification had expired.

Appellant's primary contention was that his reclassification and induction was an unconstitutional sanction against his symbolic act of protest in destroying his draft card and thus was invalid as in violation of his First Amendment rights. He also, however, attacked his reclassification as invalid since it had preceded the sending of a Delinquency Notice.

After rejecting the Government's contention that appellant was foreclosed

15. See, e. g., United States v. Gearey, 368 F.2d 144 (2d Cir. 1966); United States v. Vincelli, 215 F.2d 210, reh. den., 216 F.2d 681 (2d Cir. 1954); United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y. 1966).

16. See United States v. Walsh, 279 F.Supp. 115 (D.Mass.1968).

17. See Boswell v. United States, 390 F.2d 181 (9th Cir. 1968).

18. See Application of Shapiro, 392 F.2d 397 (3d Cir. 1968).

from attacking his reclassification because of his failure to exhaust his administrative remedies by taking an administrative appeal, the Court of Appeals held that the reclassification was not invalidated by the Board's action contrary to regulations, since appellant had not been prejudiced thereby. It took the position that all the appellant had lost by the Board's failure to give him timely notice of delinquency was the opportunity to secure administrative review of his constitutional claim of First Amendment violation. This the Court undertook to cure by entertaining that claim on appeal. It then went on to hold against appellant on his constitutional claim, concluding that the reclassification and order to report for induction did not violate his First Amendment rights and affirmed the conviction.

The Wills case is plainly distinguishable on its facts from the case at bar. Among other things, Wills refused to cooperate with the Selective Service authorities in any way. Shiffman, on the other hand, made bona fide efforts to cooperate with the Board which were rendered largely ineffective by the simultaneous delinquency declaration and reclassification to I-A.

But apart from the factual distinctions, the Wills opinion seems to assume that the only purpose of sending a Delinquency Notice under 32 C.F.R. § 1642.4 is to inform the registrant of the respects in which he was declared delinquent and to enable him to take an effective appeal. Insofar as the opinion rests on this assumption, I do not find it persuasive.

Under the construction which I have given to the regulations, the major purpose of the Delinquency Notice is to give the registrant an opportunity to present facts and circumstances to the Local Board on which it may, in its discretion, remove him from the delinquent status which would form the basis for reclassification as a I-A delinquent. Absent such an opportunity for response by the registrant, the Local Board has nothing before it except the bare Selective Service file on which to determine whether the delinquency is such that the drastic sanction of I-A reclassification is appropriate.

In this case, Shiffman, in response to the Notices of Delinquency and of I-A Reclassification which he received at the same time, promptly wrote to the Board advising it of the change of his address by reason of his VISTA transfer to New York. He thus cured one of the delinquencies stated in the notice. The Board then had in its hands the II-A Notice of Classification deferring Shiffman on account of his VISTA assignment, which had been returned because of Shiffman's move from Boston to New York. Had the II-A classification not been revoked by the premature I-A delinquency classification, all that would have been needed to correct Shiffman's delinquency would have been to supply him with the II-A Notice of Classification which had been already in effect when he sent his August 8, 1967 I-A Notice to the Attorney General. His default would thus have been corrected. But no such simple and just solution was available for the reason that the I-A delinquency classification had already superseded the II-A deferment.

In the posture of the proceedings before it, the Board took no action on Shiffman's letter but merely noted that a change of address had been received. However, when the Board received the appeal by VISTA from the I-A reclassification it considered the file, which included the new Report of Information form [19] pointedly referring to the FBI report that Shiffman had returned his I-A card to the Attorney General but making no reference to the receipt of the new address. It may be noted that the Board had received the Hershey memorandum of October 24th and the Hershey letter of October 26th very shortly before this.[20] The Local Board then made a "decision not to reopen" and forwarded

---

19. See supra at 7 and 7A.

20. See text and accompanying notes, supra at 5 and 6. See also infra at 29 and 30.

the file to the Appeals Board. The Appeals Board retained Shiffman in Class I–A.

It seems unlikely that the VISTA appeal from the I–A reclassification, apparently treated by the Local Board as an application to reopen, was considered by the Board as favorably as it would have viewed a simple application to remove the delinquency before a decision to reclassify had been made. Nor can it be assumed that the same result would have been reached on the appeal had the Local Board followed the regulations, for the record before the Appeals Board might then have been quite different.

It would serve no useful purpose to speculate on what would have happened if the Local Board had followed the requirements of the regulations. By being denied the opportunity to respond to the Notice of Delinquency and have his response considered by the Board before reclassification as delinquent I–A, as the regulations required, Shiffman was deprived of a safeguard afforded him by the regulations for his protection. Where a registrant is deprived of such a safeguard "he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation." Simmons v. United States, 348 U.S. 397, 406, 75 S.Ct. 397, 402, 99 L.Ed. 453 (1955).

Because of the very limited scope of judicial review of Selective Service decisions, see Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and the potential severity of the sanctions involved, courts have been especially sensitive to violations of the Selective Service regulations by Local Boards. Under the delinquency regulations, given the extremely broad scope of the Board's powers, the drastic nature of the sanctions which may be imposed, and the lack of standards, such sensitivity is particularly necessary.

Moreover, it may be noted that the entire delinquency procedure under the regulations has recently been under substantial attack on statutory and constitutional grounds. The Solicitor General in his Brief in Oestereich v. Selective Service System, supra, stated that it is questionable whether delinquency reclassification, under the regulations as they now stand, is consistent with the Selective Service Act and the Constitution. See generally Brief of Solicitor General at 44–58, Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).[21] He also recognized that there are questions as to whether in the absence of standards for the exercise of Local Board discretion, the delinquency regulations, even if authorized by statute, are invalid as an unconstitutional delegation of legislative authority, *id.* at 56 [22], and "whether the subjection of a registrant to the entire process of delinquency, reclassification and induction amounts, in the present circumstances, to the imposition of a penal sanction "without constitutional protections, particularly in the light of the Hershey letter of October 26th.[23]

---

21. See also United States v. Eisdorfer, 67 Crim. 302 (E.D.N.Y. June 24, 1968) and United States v. Eisdorfer, 299 F.Supp. 975 (E.D.N.Y. April 16, 1969) (opinions of Dooling, D.J.). The Solicitor General described the earlier decision in *Eisdorfer* as "persuasively" setting forth reasons for concluding that the delinquency regulations are unauthorized by statute. Brief of Solicitor General at 55, Oestereich v. Selective Service System, supra. Under the later decision in *Eisdorfer*, Judge Dooling held that these regulations are unauthorized by law.

22. Cf. Oestereich v. Selective Service System, 393 U.S. 233, 237, 239, 89 S.Ct. 414 (1968).

23. Brief of Solicitor General at 57. See generally id, at 49–53, 56–57. See also Oestereich v. Selective Service System, 393 U.S. 233, 244 n. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (concurring opinion of Harlan, J.) ; Breen v. Selective Service Local Board, 406 F.2d 636 at 639, 642 (2d Cir. 1969) (dissenting opinion of Feinberg, J.).

In this connection, it may be noted that the delinquency declaration and reclassi-

These troublesome questions highlight the need for meticulous adherence by the Local Board to the minimal protections provided the registrant under delinquency regulations.

All of these contentions, as well as others, have been made by Shiffman in the case at bar. It is unnecessary, however, to pass on these issues here. For I hold that under all the circumstances here, the violation of the regulations by the Local Board deprived Shiffman of an important safeguard provided for his protection and that its action in reclassifying him as I–A at the same time as it declared him a delinquent and before he had an opportunity to respond to a Notice of Delinquency, was invalid and of no effect. It follows that his induction into the Army pursuant to such reclassification was unlawful and cannot be permitted to stand.

The petition for a writ of habeas corpus therefore will be granted and such a writ will issue directing respondent to release petitioner Shiffman from the United States Army.

It is so ordered.

fication in the instant case were clearly the result of Shiffman's action in sending his card to the Attorney General as a protest. And, given the sequence of events, it can only be concluded that the Hershey Memo and the Hershey letter were significant factors in the Board's determination.