**UNITED STATES of America,
Plaintiff,**

v.

**James Allen BOBZIEN, Defendant.**

**Crim. No. 4243.**

United States District Court
C. D. California.

Dec. 8, 1969.

Wm. Matthew Byrne, Jr., U. S. Atty., and Robert L. Brosio and David H. Fox, Asst. U. S. Attys., Los Angeles, Cal., for the Government.

David S. Sperber, Los Angeles, Cal., for defendant.

### MEMORANDUM OPINION

CRARY, District Judge.

Defendant is charged with violation of Title 50, United States Code App., Section 462, refusal to be inducted under the Military Selective Service Act of 1967. He registered with his Local Board in Wheaton, Illinois, on March 10,

1967, was classified II–S (student deferment) on March 30, 1967, to expire August, 1967, and again on January 11, 1968, he was classified II–S to expire in October, 1968. [Ex. 1, pgs. 3 and 11.]

On November 20, 1968, the defendant advised the Local Board by letter dated November 14th that he could no longer cooperate with the Selective Service System. The letter also stated that the defendant had told his Board when he registered that he wanted to be an officer in order to better serve his country but since then he had come to realize that the Vietnam war was unjust and immoral and that as a follower of Christ he must do everything in his power to stop it. He returned his registration and classification cards with the letter.

Following the advice of the Illinois headquarters of the Selective Service System, the Local Board, on December 3, 1968, mailed to defendant SSS Form 150, for conscientious objectors, to be completed and returned by January 3, 1969, and, on December 4, 1968, mailed to defendant a delinquency notice dated December 3rd advising him that he was a delinquent because of his "Failure to have Registration Certificate and Classification card in your possession." By the said notice, he was directed to report to his Local Board immediately, in person or by mail, or take the notice to the Local Board nearest him for advice as to what he should do. The notice further stated that his failure to do as instructed would subject him to severe punishment and that he might be classified I–A as a delinquent and ordered to report for induction. On December 3rd defendant was reclassified I–A and notice of the classification was mailed to him on December 4th with notice of his right to a personal appearance before the Board or an appeal within thirty days. Order to report for induction on January 29, 1969, was mailed to the defendant on January 6th.

Defendant returned the Form 150 to the Board with his 4-page letter dated January 10, 1969 (Ex. 1, pgs. 41–44), wherein he stated that he was returning the uncompleted Form and that he refused to " * * * apply for this exemption, or any other issued by the Selective Service System." He further stated, among other things, "You are in effect demanding that I apply for a permit *not* to kill—a very strange twist, you must admit. I am beginning to question your sanity and the sanity of our entire society for sending me this form. * * * The burden of proof rests with you, gentlemen, not with me. You, as agents of the coercive Selective Service System and the American military, must prove to me *beyond a doubt* that the Vietnam War is just and necessary before I would even consider taking up arms. Peace is innocent until proven 'guilty', not vice versa. You have tried to cloak murder in Vietnam with legality, but you will never be able to justify it on moral grounds. By accepting or applying for a conscientious objector status I would be tacitly acknowledging the legitimacy of the Selective Service System and the immoral war it supports. * * * Henceforth I assume control over my own destiny, for to cooperate with evil in any way is to do evil. I believe that it is in the interest of all humanity as well as the 'national interest' that the United States withdraw from Vietnam. I can best serve this interest by complete non-cooperation with the Selective Service System."

By letter dated March 11, 1969, the defendant advised the Board that he refused to be inducted. In the concluding paragraph of that letter he says: "This day the United States Military demands that I surrender my conscience, that I sign over to it my God-given ability to make moral choices. I do not recognize its authority to do so."

It can well be concluded from defendant's letters that he would be willing to participate in a "just war" and it is the unjustness of the Vietnam war that violates his moral code.

It is contended by the defendant that:

(1) A reasonable time must pass between the notice to a registrant of a

delinquency and his re-classification to I–A so that he be allowed time to purge himself of the delinquency, and

(2) His turning in his draft card did not justify his being re-classified I–A from II–S because II–S is to be deemed to have equal status with a statutory exemption (IV–D).

In support of his first point, defendant relies on United States Shiffman v. Commanding Officer, 301 F.Supp. 1363 (D.C.S.D.N.Y., July, 1969). He also urges that his position on this point is supported by the Selective Service regulations, 32 C.F.R. § 1642.4(c), which provides that a registrant who has been declared to be a delinquent may be removed from that status by the Local Board at any time, and § 1642.10, which provides that no delinquent shall be placed in classification I–A " * * * unless the Local Board has declared him delinquent * * * and thereafter has not removed him from such delinquency status."

■ Assuming, arguendo, that a reasonable waiting period was required, the question arises as to whether the defendant was prejudiced thereby in the circumstances. The rule is well established that a procedural error by the Board which does not prejudice the registrant does not invalidate the notice for induction. Edwards v. United States, 395 F.2d 453, 455–458; Yaich v. United States, 283 F.2d 613, 618–619 (9 C.A. 1960); and United States ex rel. Lipsitz v. Perez, 372 F.2d 468, 469 (4 C.A.1967).

■ In the case at bar, the defendant, on three different occasions, very clearly informed his Local Board that he would no longer cooperate with the Selective Service System. See his letters dated Novemebr 14, 1968, January 10, 1969, and March 11, 1969. He further failed to make an appeal from his I–A classification. There is no reason to believe that if a "reasonable time" had elapsed between the issuance of the delinquency notice and the re-classification that defendant would have removed himself from such delinquency status.

■ As noted above, the notice of noncooperation was received by the Board on November 20th, the notice of delinquency, the I–A classification, and advice of the right to personal appearance and to appeal were mailed by the Board on December 4, 1968. The Form 150 was mailed to the defendant on December 3rd with the instructions to complete and return not later than January 3, 1969. The order for induction was not issued until January 6, 1969. Having in mind all of the facts and circumstances, it does not appear that the defendant was prejudiced by the action of the Board. When one states his position clear and unequivocal and continues to clearly maintain that position it does not appear that under the guise of a constitutional right he must be given time to change his mind before he is classified I–A. Each case must, of course, be decided on its own particular facts. By his every act and statement defendant demonstrated his refusal to, in any way, comply with the Selective Service Act.

There is the further fact that the defendant's II–S classification issued January 11, 1968, expired in October, 1968 (Ex. 1, pgs. 3 and 11), and he did not comply with his obligation to provide the Local Board each year with evidence that he was satisfactorily pursuing a full time course of instruction in a college, university, or similar institution of learning, as required by Title 13, C.F.R. § 1622.25(d). The last information from the Registrar of Wheaton College with respect to the enrollment of defendant at that institution was dated October 4, 1967. [Ex. 1, pgs. 18–19.]

The Government contends that the case of Wills v. United States, 384 F.2d 943 (9 C.A. 1967), controls the instant case. Certiorari was denied by the United States Supreme Court on June 10, 1968 (392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366), and petition for re-hearing was denied October 14, 1968 (393 U.S. 898, 89 S.Ct. 66, 21 L.Ed.2d 185).

Wills was a full time student with a II–S deferment on October 15, 1965, when

he advised his Draft Board, by letter, that he had intentionally destroyed his draft card and "* * * *will henceforth refuse to carry another* * * *I will refuse to cooperate with your office in any manner whatsoever.* " [Emphasis added.]

On October 23, 1965, Wills was notified that he was re-classified I–A and advised of his right to a personal appearance and appeal. The Board had declared Wills a delinquent on October 21 but did not mail him the delinquency notice until January 3, 1966. The Court observed (384 F.2d pages 945–946) that in these circumstances Wills was not precluded from attacking his re-classification to I–A because he failed to exhaust his administrative appeal, observing:

"Knowledge of his delinquency status and impending induction would thus be relevant to appellant's decision whether to appeal, and the board's failure to disclose this fact at the proper time cannot be said to be without consequence to that decision." [Page 946.]

Wills attacked his re-classification as being contrary to the regulations because it preceded the sending of the delinquency notice. The Court held that Wills had not been prejudiced because he only lost his right to have his constitutional claim considered by the appeal board and that loss was cured by the Court of Appeals entertaining that constitutional issue.

In considering Wills' claim of constitutional right to free speech, as applied to the destruction of his draft card, the Court said that the law passed by Congress against card burning, which Wills found to be offensive, "* * * *simply does not concern us here."

The card burning and the refusal to thereafter carry a draft card were held to be, in fact, one offense so far as the Board was concerned. The Court found that the Board did not re-classify Wills because he acted in protest but because he destroyed his draft card and refused to henceforth carry another.

The refusal by Wills to carry a draft card in the future and his refusal to cooperate with the Selective Service System "in any manner whatsoever" surely would be conduct or activity related to the merits of granting or continuing a II–S deferment, even though it be assumed, for discussion, that a II–S deferment be entitled to equal status with a statutory exempt classification. The Wills decision would, therefore, be within the purview of Oestereich v. Selective Service Board, infra.

The Supreme Court of the United States, on December 16, 1968, decided the case of Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L. Ed.2d 402, wherein a divinity student classified IV–D was re-classified I–A following his being declared a delinquent after he turned in his draft card "* * * for the sole purpose of expressing dissent from the participation by the United States in the war in Vietnam." He perfected an administrative appeal, which he lost, and was thereafter ordered to report for induction.

The Supreme Court held that there is no legislative authority to deny an unequivocal statutory exemption to a registrant, who has qualified for such exemption, because of conduct or activities unrelated to the merits of granting or continuing the exemption and that delinquency proceedings may not be used for that purpose. The Court, at page 237 of its opinion, 89 S.Ct. at 416 states:

"Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption."

Oestereich, however, did not declare that he would no longer cooperate with the Selective Service System, as did the registrant in the Wills case, supra, and in the case at bar.

The return of a draft card was ruled to be unrelated to the statutory exemption but refusal to cooperate with the

Selective Service System in the future, as demonstrated by words and actions of the defendant herein, would appear to take the defendant outside of the rule in the *Oestereich* case. Here we are not concerned with only the political views of the defendant, as in the Oestereich case, supra, (page 237, 89 S.Ct. 414) but with refusal to further cooperate with the Selective Service System, which would directly relate to the merits of granting and continuing the defendant's II–S deferment. A registrant would not be entitled to a II–S deferment, or the continuation of same, where, as in the instant case, he refused to cooperate in any way and divorced himself entirely from the Selective Service System as a system supporting an unjust war in Vietnam.

This Court concludes that "turning in" or destroying a draft card in protest is punishable as a crime and not grounds for re-classification of a registrant in a statutorily exempted class but that refusal to cooperate with the Selective Service System in any manner is conduct related to the merits of granting or continuing an exemption or deferment.

The District Court, Northern District of California, in the recent case of United States v. Stewart, 306 F.Supp. 29 (D.C.N.D.Cal., June 25, 1969), held that II–S deferment is to be given equal status as a statutory exemption, such as IV–D. The Court then states that the Wills case, supra, is not persuasive authority since the Court of Appeals there proceeded on the premise that the delinquency regulations were valid with respect to men whom Congress had mandatorily placed beyond the reach of those required to serve.

The Court, in the *Stewart* case, where the defendant surrendered his draft card but " * * * declined to make any statement at that time," was not confronted with a refusal to cooperate further with the Selective Service System nor the fact the registrant had not provided the Local Board with evidence that he was satisfactorily pursuing a full time course in College so as to qualify him for II–S classification as of the time he was classified I–A, to wit, December 3, 1968, as in the instant case.

After consideration of all of the evidence in the instant case, the Court concludes that the defendant Bobzien is guilty as charged.