James Donald EDWARDS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21879.

United States Court of Appeals
Ninth Circuit.

May 10, 1968.

Rehearing Denied June 21, 1968.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Eric C. Nobles, (argued), Asst. U. S. Atty., Robert M. Talcott, Asst. U. S. Atty., William M. Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and FOLEY, District Judge.*

ELY, Circuit Judge:

On February 13, 1967, appellant Edwards was found guilty of having refused

* Honorable Roger D. Foley, Chief United States District Judge for the District of Nevada, sitting by designation.

induction into the armed services in violation of section 12 of the Universal Military Training and Service Act, 50 U.S.C. App. § 462. He was thereafter sentenced to the custody of the Attorney General for a period of three years. This appeal followed. Our jurisdiction rests upon 28 U.S.C. §§ 1291, 1294.

On January 16, 1963, Edwards registered with Local Board No. 115, and on April 8, 1964, the local board received a completed Classification Questionnaire (SSS Form No. 100) from him. In this questionnaire Edwards claimed to be a conscientious objector and requested a Special Form for Conscientious Objector (SSS Form No. 150). Subsequently the local board also received a completed copy of this special form, wherein Edwards again claimed to be a conscientious objector. On June 8, 1964, however, the local board placed Edwards in Class I-A. On the following day, notice of this classification was mailed to Edwards. No appeal was taken from the classification.

On May 20, 1965, Edwards was ordered to report for a physical examination on June 11, 1965, and on that date he reported and was found acceptable. Four days later, on June 15, 1965, he notified the local board that his name had been changed by court order from James Donald Humphreys to James Donald Edwards. At that time he also requested a new Notice of Classification (SSS Form No. 110) to replace the one which he had received earlier, and he supplied the local board with a Current Information Questionnaire (SSS Form No. 127), which disclosed that he had been married three days earlier.

On October 25, 1965, the board again classified Edwards as I-A, and on Octo-

ber 29, 1965, a notice of this action was mailed to him. No attempt was made to appeal this second classification action. On December 23, 1965, Edwards was ordered to report for induction on January 11, 1966. On that date he reported to the induction center and completed various steps preliminary to induction; however, he refused to be inducted.

■ Edwards' principal contention is that the local board's denial of a conscientious objector classification (class I-O) was without basis in fact and was therefore contrary to law. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). We do not reach this issue. It is well settled that a registrant may not challenge his classification in the courts where, absent exceptional circumstances, he has failed to exhaust his administrative remedies by appealing from the local board's classification, as authorized by 32 C.F.R. § 1626.2. Prohoroff v. United States, 259 F.2d 694 (9th Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Evans v. United States, 252 F.2d 509 (9th Cir. 1958); accord, e. g., Thompson v. United States, 380 F.2d 86 (10th Cir. 1967). As indicated above, Edwards did not attempt to appeal from either classification decision made by his local board. It clearly appears that he was aware of his right to appeal.[1] His direct testimony at the trial includes the following:

"Q When you filled out the classification questionnaire [following the initial registration] on Sheet No. 7 you indicated you were not formally ordained as one of the ministers of Jehovah; correct?

"A True.

---

1. There is some indication in the record that Edwards did not believe that he had a right to appeal from the second classification, since the card sent to him appeared to be a duplicate of his earlier one with only a change in the name. He testified that he received the card in October 1965, "[b]ut on the back of it it said, 'This card must be returned' within so many days for an appeal, I believe it

was. But on the back it had the date 1964." This card was not received into evidence. Appellant admits in his closing brief that the Government "correctly" states that "[o]n October 25, 1965, defendant was again classfied I-A by the Board * * *." As noted previously, Edwards made no attempt to appeal from this second classification.

"Q When you were interviewed by FBI Agent Harwell, as is shown in Government's Exhibit No. 2, you told him that you didn't appeal. Why? What reason did you give him?

"A Well, at this time I had just become acquainted with the organization and I wasn't really too sure of that fact. When I did fill out the conscientious objector form I was assured of that later on when I was dedicated as an ordained minister, that I would be able to change my classification.

"Q At the time when your 1–A card came you didn't have a complete commitment, or did you?

"A Well, at that time I was still not ordained. I felt that if they refused my appeal it would be on grounds that I was not an ordained minister, so I felt at that time that I shouldn't appeal it because I wasn't ordained."

Clearly, these reasons [2] present no exceptional circumstances excusing Edwards'

2. The ministerial classification which Edwards desired (class IV-D) would have exempted him both from military service and from any civilian work assignment. He was apparently not interested in appealing in order to obtain the conscientious objector classification (class I-O) that he here claims should have been granted him, since the record indicates that he would not have accepted the civilian work assignment required for persons so classified. See 32 C.F.R. § 1660.20. The record contains no indication that Edwards ever attempted to obtain a IV-D classification from the board.
3. This letter, in part, recites:
   "All registrants who have been determined to be fully qualified for induction in all respects were assembled. The Induction Officer informed them of the imminence of induction, quoting the following:
   'You are about to be inducted into the Armed Services of the United States, in the Army, the Navy, the Air Force, or the Marine Corps, as indicated by the service announced following your name when called. You will take one step forward as your name and service are called and such step will constitute your induction into the Armed Service indicated'.
   "When Mr. James Donald EDWARDS name and service were called,

failure to appeal. We are precluded, therefore, from reviewing the classification.

■ Edwards' second contention is based upon his vague assertions that there is "at the least doubt as to whether he was administratively processed by the right board members." Our review of the record convinces us that appellant's contention in this regard is totally devoid of merit.

■ Lastly, it is argued "that the induction ceremony was contrary to law and prejudicial to appellant." The appellant's selective service file, introduced into evidence by the Government, contains a letter to the United States Attorney written on behalf of the Commander of the Induction Center. The letter describes the manner in which Edwards had been processed and had refused to be inducted.[3] This commonly used form

he refused to step forward. He was removed quietly and courteously from the presence of the group about to be inducted and processed as prescribed in paragraphs 36b and 40c, AR 601–270, dated 11 March 1960, as amended.
"Mr. James Donald EDWARDS persisted in his refusal to submit to induction. He was informed that such refusal constitutes a felony under the provisions of the Universal Military Training and Service Act, as amended. He was informed further that conviction of such an offense under civil proceedings will subject him to be punished by imprisonment for not more than five years, or a fine of not more than $10,000, or both. He was then informed again of the imminence of induction by the Induction Officer, who quoted the following:
'You are about to be inducted into the Armed Services of the United States, in the Army, the Navy, the Air Force, or the Marine Corps, as indicated by the service announced following your name when called. You will take one step forward as your name and service are called and such step will constitute your induction into the Armed Service indicated'.
"Mr. James Donald EDWARDS name and service were again called, but he still refused to step forward."

letter, which is printed with blanks for the appropriate names, dates, etc., states, in effect, that the individual concerned was processed in conformity with Army Regulation 601–270, the regulation prescribing the proper procedure for induc-

tion processing. Edwards testified, however, that he was not processed in exactly the same manner as that stated in the form letter.[4] According to his testimony, the principal difference, in essence, was that, after he had indicated he would re-

4. Upon direct examination, Edwards testified as follows:

"Q In what way does * * * [the letter describing the induction procedure] not precisely relate what actually happened?

"A Well, just a second. They did not at the time when they were giving the oath give me the oath. They sent me down to the executing captain's office before giving me the oath.

"Q When you say 'oath' what do you refer to?

"A Oh, the pledge that—they did not ask me to stand, they did not ask me to step forward. I was sitting there and, you could call it, shooting the breeze. The guys up there who—it was a sailor, I believe it was. He was giving the oaths that day. They were sitting there talking, and he says, 'This is just preliminary.' He said, 'Is anybody here going to refuse induction?' I raised my hand. He then called for a soldier to take me down to the executing captain's office.

"Q Then what happened there?

"A Well, I walked into the office and the executing captain looked at me, asked me what I was there for. He told me to wait outside and then he would call me.

"At that point I went outside. A few minutes later he called me into his office where a Marine sergeant stood and another gentleman in a uniform and the captain.

"At that time he asked me on what grounds was I refusing induction. It was on grounds of religious beliefs.

"They asked me to sit down. I sat down. The Marine sergeant told me to stand, and he gave me the oath. I gave the oath and I didn't step forward.

"He says, 'Sit down again.'

"So I sat down again.

"He says, 'Step forward.'

"I didn't step forward.

"He said, 'Okay,' he says, 'the FBI will be getting in contact with you.'

"And they made me go outside and sign a statement on what grounds I didn't submit to induction.

"Q Is that all that took place?

"A. Well, the other gentlemen in there, I don't know what he was in there for, but he was asking me a few questions. He wanted to know why I wouldn't take a job, and I told him, 'Because it would be a compromise.'

"Q What job?

"A Well, they didn't offer me any job.

"Q Then go on.

"A He just asked me a few questions. He says, well, why wouldn't I work in a hospital. I felt at that time I would tell him—

"Q Excuse me. Did he ask you why you wouldn't work in a hospital?

"A. No. Before I got it out the captain answered it for him. He said that, 'They would believe that they would patch somebody up and send them back out to kill somebody.' He said, 'It's kind of a crazy thing, you know.'

"Q Well, what else happened?

"A That was just about it. That's all that took place."

In the cross-examination, there appears the following:

"Q Now, [your attorney] * * * showed you * * * [a copy of the letter] and asked you to read * * * [it] on your direct examination. I will show [it] to you again. He asked you a question which you answered that was substantially what happened down there; is that correct?

"A That's correct.

"Q Now, isn't it a fact, Mr. Edwards, that prior to your being taken to the captain's office that another member of the Armed Forces indicated that, 'You're about to be inducted into the Armed Forces,' and that, 'Anybody who is not going to be inducted should indicate thus'?

"A Well, I guess you might call it that. He didn't ask anybody to stand

fuse induction, he was removed from the group about to be inducted and that he was given the prescribed two opportunities for induction in a separate room.[5] Assuming, *arguendo*, that such was the fact, it is nevertheless clear that Edwards was not prejudiced thereby. See Bradley v. United States, 218 F.2d 657, 660–661 (9th Cir. 1954), rev'd on other grounds, 348 U.S. 967, 75 S.Ct. 532, 99 L.Ed. 754 (1955). The essential requirements of the induction process were properly met. Compare Chernekoff v. United States, 219 F.2d 721, 724–725 (9th Cir. 1955). Where such is the case and where it is clear that the individual intended to, and did, refuse to submit to induction, it is no defense that minor departures from the ordinary induction procedure occurred. Cf. United States v. Spiro, 384 F.2d 159 (3d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1968); United States ex rel. Lipsitz v. Perez, 372 F.2d 468 (4th Cir.), cert. denied, 389 U.S. 838, 88 S.Ct. 57, 19 L.Ed.2d 100 (1967); United States v. Lawson, 337 F.2d 800, 812 (3d Cir. 1964), cert. denied, 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 84 (1965); Yaich v. United States, 283 F.2d 613, 619–620 (9th Cir. 1960).

Affirmed.

at that time or—he just said, 'This is'—everybody was still talking and he was, you know how they do down there, they—I don't know whether you do or not. But they talk and they tell you where you are going to go and where you are going to be shipped out probably to.

"They were talking. He said, 'Oh, yeah,' he said, 'this is one thing I have to ask you. I don't know if anybody in here is, but,' he says, 'is anybody here going to refuse induction?'

"And I just raised my hand. At that time he had another man come and take me down to the executing captain's office.

"Q You were asked quietly and courteously, I presume, to accompany them down there?

"A Yes, sir.

"Q When you got down to the captain's office you indicated that an enlisted man administered the oath to you.

"A Yes, sir.

"Q And that at that time you refused to step forward?

5. In his closing brief before our court, appellant asserted, for the first time, that he was not given the warning of the penalty for refusing induction, as required by the Army Regulation. All evidence which bears upon this allegation is quoted in notes 3–4, supra. That evidence does not support appellant's new contention; therefore, we do not reach the legal point which he now attempts to raise.