Cornelious **LOCKHART**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21311.

United States Court of Appeals
Ninth Circuit.

En Banc.

Dec. 18, 1969.

Rehearing Denied Jan. 16, 1970.

Browning and Hamley, Circuit Judges, dissented.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Gabriel A. Gutierrez (argued), Craig B. Jorgenson (argued), Robert L. Brosio, Asst. U. S. Attys., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, CARTER and HUFSTEDLER, Circuit Judges.

ELY, Circuit Judge.

This appeal follows appellant's conviction for having refused to submit to induction under the Universal Military Training and Service Act, 50 U.S.C. App.

§ 462. Our jurisdiction is conferred by 28 U.S.C. §§ 1291, 1294.

Shortly after his eighteenth birthday, Lockhart registered with the Selective Service System at Local Board No. 121 ("the board") in Los Angeles, California.[1] As the time for induction of registrants in the appellant's age-group approached,[2] the board mailed Lockhart a Classification Questionnaire, SSS Form No. 100. In this form, which he immediately completed and returned, Lockhart indicated that he was a conscientious objector and requested a special form, SSS Form No. 150,[3] in which he might more fully describe his beliefs. The board immediately sent this special form to Lockhart; however, the Selective Service file discloses that the form was never returned. Shortly thereafter, on October 2, 1964, Lockhart's board classified him I–A, available for military service. When informing Lockhart of this classification, the board explained that should he question the validity of the classification, he had a right to a personal appearance before the board, or alternatively, the right to appeal the classification to the state appeal board. See 32 CFR §§ 1624.1, 1624.2, 1624.2(e), 1625.13 (1969).

Lockhart took neither of the remedial avenues of which he was advised; however, after allowing more than five months to pass, he requested a second Special Form for Conscientious Objectors, the Form No. 150. Although the board was not required to do so, it immediately complied with his request, and this time, Lockhart completed and returned the form. The board reopened Lockhart's Selective Service file to consider the information which the completed form contained and then concluded that Lockhart had failed to present sufficient evidence to warrant a change in his class. I–A status. Again Lockhart was notified of his rights to the full administrative review which Congress has provided. See Petrie v. United States, 407 F.2d 267 (9th Cir. 1969). Thereafter, when Lockhart again failed to initiate any administrative review within the prescribed period, the board issued the order of induction which led to Lockhart's conviction.

Lockhart's defense consisted, in large measure, of a challenge to the validity of his induction order upon the contention that there was no "basis in fact" to support the board's denial of a conscientious objector exemption. The District Court, following its interpretation of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and Donato v. United States, 302 F.2d 468 (9th Cir. 1962), applied the doctrine requiring the exhaustion of administrative remedies [4]

---

1. With certain enumerated exceptions, every male citizen of the United States must familiarize himself with his responsibilities under the Selective Service Act and must present himself for registration in the Selective Service on his eighteenth birthday. See 32 CFR §§ 1611.1–1611.7 (1969).

2. Under section 5(a) of the Selective Service Act, the President determines the manner and order of selection, and the Act specifically allows such selection to be "by age group or groups." The present regulations, which were also effective when Lockhart received his induction notice, provide an "oldest first" order of selection. Hence, local boards draft all eligible registrants closest to age twenty-six before processing younger registrants. See 32 CFR § 1631.7(a) (1969).

3. Lockhart signed the following portion of the Form 100 which his board sent to him:

"I claim to be a conscientious objector by reason of my religious training and belief and therefore request the local board to furnish me Special Form for Conscientious Objector (SSS Form 150)."

This was the only indication of Lockhart's beliefs which Lockhart supplied to his board prior to his initial I–A classification.

4. In his ruling on the application of the exhaustion doctrine, the district judge commented:

"I am * * * a District Judge confronted with a Supreme Court decision, not just another District Judge, or some administrative ruling, where

and refused to consider the propriety of the board's classification. In taking this course, the District Court faithfully adhered to an unbroken line of this court's opinions. *See, e. g.,* Yeater v. United States, 397 F.2d 975 (9th Cir. 1968); Edwards v. United States, 395 F.2d 453 (9th Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968); Woo v. United States, 350 F.2d 992 (9th Cir. 1965); Greiff v. United States, 348 F.2d 914 (9th Cir. 1965); Badger v. United States, 322 F.2d 902 (9th Cir. 1963), cert. denied, 376 U.S. 914, 84 S.Ct. 669, 11 L.Ed.2d 610 (1964); Prohoroff v. United States, 259 F.2d 694 (9th Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed. 2d 572 (1959); Evans v. United States, 252 F.2d 509 (9th Cir. 1958). It is the District Court's application of the exhaustion doctrine which is here challenged.

▋ Generally, a proper application of the exhaustion doctrine is made when the nature of the particular dispute is such that the objectives sought to be served by the doctrine are achieved by its application to the specific controversy. As the Supreme Court has explained in the context of a Selective Service case, "Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). *See also* Craycroft v. Ferrall, 408 F.2d 587, 594 (9th Cir. 1969).

The exhaustion doctrine serves an important function in our governmental scheme. Administrative agencies are not a part of the Government's judicial branch. They are "independent" and part of the Executive. L. Jaffe, Judicial Control of Administrative Action 425 (1965). Accordingly, when litigants urge the courts to resolve questions which Congress has committed to the discretion or expertise of the Executive through a particular agency, the courts, mindful of the checks and balances built into our system, avoid interference with the agency unless and until it has exceeded its powers. Any other course would quickly lead the courts to exercise their judicial discretion in areas wherein they should be powerless to act. When properly applied, then, the exhaustion doctrine prevents improper encroachment into the Executive area, or, as Professor Jaffe explains, the exhaustion requirement is "an expression of executive and administrative autonomy." *Id.*

The instant case presents a registrant who, having failed to exhaust an appeal, asked the District Court to determine whether he sustained his burden of proving entitlement to military exemption as a conscientious objector. Whether or not Lockhart deserved the exemption which he claimed depends entirely upon the sincerity of the beliefs described in his SSS Form 150. Sincerity, vel non, as has frequently been explained, is ascertained by an appraisal of the registrant's subjective state of mind and is simply not amenable to unerring objective determination. *See, e. g.,* Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Bishop v. United States, 412 F. 2d 1064 (9th Cir. 1969); Bradley v. United States, 218 F.2d 657 (9th Cir. 1954). *See also* McKart v. United States, *supra*. By its nature, the question which Lockhart presented to the court below is one which, for its resolution, necessarily requires the application

---

in the Estep versus United States, in that case the Supreme Court of this country made this matter of exhausting administrative remedies very clear and very plain, I think.

"And I would read the Donato case as saying that if, for example, the man doesn't appeal because he is sick, or he is fighting fires, or he was hit by an automobile, or something that would prevent him from actually doing this, then in that event they would allow, they would set aside this defense, or this exhaustion of the administrative remedies decision. So that that would not apply to that particular individual.

"I find under the state of the evidence in this case that this is not the situation here."

of discretion—discretion which, in the first instance, we think Congress properly placed with the local and appeal boards of our Selective Service System.[5] Accordingly, we have heretofore held that registrants who, like Lockhart, claim conscientious objector exemption must exhaust administrative remedies available to them within the System.[6] Now, we must consider whether the teaching of McKart v. United States, *supra*, requires us to abandon the position which, hitherto, we have consistently taken.

In *McKart*, the Supreme Court examined the severe effects upon registrants where, as here, the exhaustion doctrine is invoked in a criminal prosecution for failure to comply with a Selective Service order. The Court recognized the severity of the exhaustion requirement; nevertheless, it concluded that its application is proper in certain cases. McKart v. United States, *supra*, 395 U.S. at 197–198, 89 S.Ct. 1657. *See* Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

*McKart* was not such a case. There, the registrant's board revoked his sole-surviving son exemption when the last member of his immediate "family unit" died. During the criminal prosecution which followed his refusal to submit to induction, McKart argued that his classification was invalid because the Selective Service board misinterpreted the exempting statute in ruling that the existence of a "family unit" is crucial. As the Supreme Court observed, the administrative review which McKart did not exhaust was not created for determination of the particular type of issue which McKart presented to the courts. Indeed, it was apparent that he was simply asking the judiciary to do something long considered part of its constitutional prerogative, to determine the meaning of a Congressional enactment. Hence, since it was not a matter which Congress could have delegated to the exclusive discretion or expertise of another branch of the government, and since the issue did not, for its resolution, require additional administrative fact-gathering, there was no compelling need for an agency decision in the first instance.[7] In short, none of the

---

5. In McKart v. United States, *supra*, the Supreme Court recognized the vast area of discretion which surrounds such determinations by both local and appeal boards.

  "Conscientious objector claims, Military Selective Service Act of 1967, § 6 (j), 81 Stat. 104, 50 U.S.C.App. § 456 (j) (1964 Ed., Supp. III), or deferments for those engaged in activities deemed necessary 'to the maintenance of the national health, safety, or interest,' *id.*, § 6(h) (2), 81 Stat. 102, 50 U.S.C.App. § 456(h) (2) (1964 ed., Supp. III), would appear to be examples of questions requiring the application of expertise or the exercise of discretion. In such cases, the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew. 32 CFR § 1626.26. The Selective Service System is empowered by Congress to make such discretionary determinations and only the local and appeal boards have the necessary expertise. See Thompson v. United States, 380 F.2d 86 (C.A.10th Cir. 1967)."
  395 U.S. at 198 n. 16, 89 S.Ct. at 1665.

6. *See, e. g.*, Yeater v. United States, 397 F.2d 975 (9th Cir. 1968); Edwards v. United States, 395 F.2d 453 (9th Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968); Woo v. United States, 350 F.2d 992 (9th Cir. 1965); Greiff v. United States, 348 F.2d 914 (9th Cir. 1965); Badger v. United States, 322 F.2d 902 (9th Cir. 1963), cert. denied, 376 U.S. 914, 84 S.Ct. 669, 11 L.Ed.2d 610 (1964); Prohoroff v. United States, 259 F.2d 694 (9th Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Evans v. United States, 252 F.2d 509 (9th Cir. 1958).

7. "Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution. There is simply no overwhelming need for the court to have the agency finally resolve this question in the first instance, at least not where the administrative proc-

purposes supporting the exhaustion doctrine would be served by its application in McKart's case; hence, held the High Court, it was not applicable.

But as the Supreme Court recognized in *McKart*, claims such as Lockhart's present a wholly distinct problem.[8] Here, where evaluation of Lockhart's claim would involve the court in matters clearly committed to the discretion of local and appeal boards within the Selective Service System, application of the doctrine serves the important objectives supporting the rule. In this case, application of the doctrine is supported not only by *McKart* but also by the disposition, as well as the history, of DuVernay v. United States, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969), aff'g 394 F.2d 979 (5th Cir. 1968). DuVernay was convicted for having refused to submit to induction, the trial court holding that his failure to appeal the local board's reclassification foreclosed consideration of various defensive contentions. DuVernay attempted to introduce evidence which, according to him, would tend to prove that Negroes were systematically excluded from membership on his local board, that he was denied due process of law by his local board, and that the chairman of the board was affiliated with the Ku Klux Klan. The trial court rejected the proffered testimony.

On appeal the Fifth Circuit affirmed DuVernay's conviction on the sole ground that DuVernay had failed to exhaust his administrative remedies. Oral argument in both *DuVernay* and *McKart* was heard by the Supreme Court on the same day, but DuVernay's conviction was affirmed by an equally divided court, Mr. Justice Fortas not participating. The Supreme Court's affirmance of DuVernay's conviction occurred only a relatively short time before the issuance of the reversing opinion in *McKart*.

Since the contentions raised by Du Vernay did not relate to the discretion-

ary functions of the local board, they would doubtless have been ignored by an appeal board. It seems to us, therefore, that DuVernay made a stronger case for relaxation of the exhaustion requirement than Lockhart has been able to present in the case at hand. Thus it follows, *a fortiori*, that Lockhart's challenge to his local board's evaluative classification decision was properly foreclosed because he had failed to exhaust his administrative remedies. Hence, guided in part by *DuVernay* and seeing nothing in *McKart* which requires us to overturn the well-established rule that registrants such as Lockhart must advance their claims before a Selective Service System appeal board, we hold that the District Court's decision was correct, absent "exceptional circumstances" which justify relaxation of the rule. See, e. g., Edwards v. United States, 395 F.2d 453, 454 (9th Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 128, 21 L. Ed.2d 115 (1968); Donato v. United States, 302 F.2d 468, 469–470 (9th Cir. 1962).

The particular circumstances held to call for such relaxation in Donato v. United States, *supra*, were highly unique. There, a registrant who intended to pursue his administrative appeals was summoned to firefighting duty during the specified time within which he might have taken such appeals. The prescribed period expired before Donato was able to return from his firefighting mission, and we held that his failure to take his administrative appeal should be excused. Although we have often explained that cases such as *Donato* are extremely rare, we have continued to recognize that, in "exceptional circumstances," the failure to exhaust administrative remedies may be excused. See, e. g., Edwards v. United States, *supra*. Here, Lockhart's only excuse for not appealing his classification was that he did not know that failure to do so would bar later efforts to challenge that classification. The Dis-

---

ess is at an end and the registrant is faced with criminal prosecution." 395 U.S. at 199, 89 S.Ct. at 1665.

8. *See* note 6, *supra, and accompanying text.*

trict Court did not believe that this excuse could be equated with those rare and compelling reasons, such as were present in *Donato* and its progeny, which can justify elimination of the requirement for exhaustion. We agree. *See* Greiff v. United States, 348 F.2d 914 (9th Cir. 1965).

■ Lockhart also argues that his conviction must be reversed due to certain procedural irregularities which allegedly occurred during the induction proceedings. The first of these contentions rests on the fact that the Selective Service file contains a Security Questionnaire, DD Form 98, on which Lockhart's name is typed but which is otherwise blank. Lockhart points to the board's notes which indicate that this form was not originally returned to the board by army personnel following the refusal to submit to induction. From this, we are urged to infer that Lockhart was never given an opportunity to complete the Security Questionnaire. Lockhart did not argue this point during his trial; however, he did make a Motion for Judgment of Acquittal which, while admittedly an indirect and unsatisfactory method of raising such issues, was sufficient to preserve it for our consideration. Howze v. United States, 409 F.2d 27 (9th Cir. 1969); Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968). See also United States v. Mizrahi, 417 F.2d 246 (9th Cir. Sept. 18, 1969).

The appellant is quite correct that if the army failed to give him an opportunity to complete the DD Form 98, his conviction must be reversed. Oshatz v. United States, *supra*. However, it is also true that if he were given an opportunity to complete the form and refused to do so, he cannot rely on a claim of consequent prejudice. Welsh v. United States, 404 F.2d 1078 (9th Cir. 1968), cert. granted, 396 U.S. 816, 90 S.Ct. 53, 24 L.Ed.2d 67 (Oct. 13, 1969); Oshatz v. United States, *supra*.

■ Aside from the fact that the form is blank and was not among the papers initially sent to the board by the induction center, there is absolutely nothing in the record which supports the inference which Lockhart urges us to draw. To the contrary, there is testimony of Lockhart himself that during the induction process, he refused to complete certain forms which were made available to him.[9] From this, the stronger inference is that Lockhart simply refused to complete the Security Questionnaire. We are obliged to review the record in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and since Lockhart introduced no proof, not even as a part of his own testimony, to the contrary, the inference that he refused to complete a presented loyalty questionnaire should control. Accordingly, he may claim no prejudice from the fact that the questionnaire was not completed. Welsh v. United States, *supra*.

9. Lockhart's testimony in the court below included the following:
    "Q. Now, before you were taken to this room where the others were, and somebody whispered to somebody, had anything occurred to let the man who brought you there know that you were going to be an objector, a refusal?
    "A. No, I don't.
    \*       \*       \*       \*       \*
    "Q. What happened five minutes before you were brought to the room where the others were seated?
    "A. Well, here we were filling out some written forms, and it had a clause

in there stating that you would go to the Service, *or some form at the time that I wouldn't sign,* or I refused to sign it at the time, so on then receiving my paper, they called it to my attention that I had not signed, and I told him, 'That is right,' that I was not going, 'I am not going to sign,' so they immediately called in someone else, and then this person, he looked at my paper, and he said, 'Oh no,' made some remark like that, and then he says, 'Follow me.' "
(Emphasis added).

Finally, Lockhart contends (1) that there was irregularity in the manner in which he was asked to take the symbolic step signifying induction and (2) that the Government failed to prove that his local board had jurisdiction to order him for induction. The record does not support these contentions.

Affirmed.

BROWNING, Circuit Judge, with whom HAMLEY, Circuit Judge, joins (dissenting).

Defendant was classified I–A by his local Selective Service board and ordered to report for induction. He reported but refused induction because of his religious beliefs. He was indicted under 50 U.S.C. App. § 462, tried to the court, convicted, and sentenced to three years' imprisonment.

Defendant asserted at trial that the local board's action in classifying him I–A and ordering him to report for induction was unlawful because there was "no basis in fact" for the board's denial of his request for a conscientious objector classification. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

A copy of defendant's Selective Service file was received in evidence. In his initial Classification Questionnaire he claimed to be a conscientious objector by reason of his religious training and belief, and stated that he was a student training for the ministry as a Jehovah's Witness. He subsequently wrote the board, "I Cornelious Lockhart Jr., 4–121–44–248, would like a Consciencances rejective form (religiouges status), Cornelious Lockhart." He completed and filed SSS Form 150, signed the statement in the form which reads, "I am, by reason of my religious training and belief, conscientiously opposed to participation in noncombatant training and service in the Armed Forces," and indicated that he believed in a Supreme Being. Asked to describe the nature of his belief, he responded, "There is a supreme being!

The Bible teaches clearly that the One is 'Jehovah' Psalm 83:18." He stated that he was a member of the Jehovah's Witnesses, and that "Our stand is base upon God written law where it plainly states at Exodus 20:13 you must not murder!! Only Jehovah God has the right to take a life because only he can give life." To the question "Under what circumstances, if any, do you believe in the use of force?" he answered, "None." In describing the origin of his religious beliefs and the nature of his religious training, he said that he was contacted by a Jehovah's Witness engaged in door-to-door ministry, that his sister gave him instructions from the Watchtower, that he had "bible study each week at home," and that he attended "five weekly meetings where I am instructed about God's wills." He reported that his mother was also "[s]tudying to be one of Jehovah's Witnesses". He provided the names of four persons who could attest to the sincerity of his views.

Defendant's spelling is bad; his language is not elaborate or literary; his religious views are simple and unsophisticated. But as Judge Winter recently wrote, "not only the articulate may qualify as conscientious objectors. Entitlement to that status is not limited to those registrants who have read United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and its progeny, and can express their views with them as models, or to those registrants who have counsel familiar with selective service law available to assist them." United States v. James, 417 F.2d 826 (4th Cir. 1969).

Defendant's representations, if true, met the statutory criteria for exemption. 50 U.S.C. App. § 456(j). The board could deny the requested classification only if it determined that defendant was insincere. But there is nothing in the record upon which such a determination could have been based. The record reflects no statement or action of the defendant inconsistent with his claimed beliefs,[1] and

---

1. The government suggests that defendant's failure to return the first SSS

Form No. 150 sent to him, to request a personal appearance before the local

since Lockhart did not appear personally before the board, the board could not have concluded from his demeanor that he was insincere. *See* Witmer v. United States, 348 U.S. 375, 381–383, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Moreover, when a conclusion that the registrant is insincere is the basis for a board decision, "the record must contain some statement of this disbelief if the classification is to be upheld on judicial review." United States v. Haughton, 413 F.2d 736, 739 (9th Cir. 1969), quoting United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968).[2] No such statement appears in this record.

The induction order was therefore unlawful.

At trial, however, the government contended that the court could not consider the unlawfulness of the induction order because defendant had not appealed to the state board from the rejection of his request for a conscientious objector classification. Defendant testified that he did not understand what an "appeal" was, and that he was not told and did not know the consequences of failing to seek administrative review.[3] The trial court nonetheless held it had "no choice" but to bar the defense.

Thus the question presented is whether defendant's failure to take an administrative appeal barred collateral attack upon the lawfulness of the induction order in a criminal prosecution for violating that order, when he had no notice that this would be the consequence of failing to exercise the right to administrative review.

The question is of first impression.[4]

board, and to appeal from the rejection of his claim, provided a basis in fact for a determination that he was insincere. The contention is specious. Defendant requested and filed a second SSS Form No. 150 within the time prescribed by the regulations. 32 C.F.R. § 1625.2. The regulations permit a registrant to appeal and to appear personally before the board, but do not recommend or require that he follow either course. 32 C.F.R. §§ 1624.1–1634.3. To draw an inference of insincerity from such indicia would be to reject defendant's claim "solely on the basis of suspicion and speculation * * * contrary to the spirit of the Act and foreign to our concepts of justice." Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132 (1954).

2. *See also* United States v. James, 417 F.2d 826 (4th Cir. 1969); Parr v. United States, 272 F.2d 416, 419 (9th Cir. 1959); Ashauer v. United States, 217 F.2d 788, 791 (9th Cir. 1954).

3. On direct examination:
   "Q. You never took an appeal, did you?
   A. No, I didn't.
   Q. Why didn't you?
   A. Well, this term 'appeal,' I wasn't really familiar with the, I didn't really know how important it was until I asked you to be my lawyer, and I found out I should have."
   On inquiry by the court:

"Q. And you did know about the time for appeal, but you claim you didn't appeal because you didn't know what it meant?
   A. Well, they sent quite a few papers, and I was signing papers, but actually the word 'appeal,' or knowing exactly what this was going to mean, I still say the truth now, I still don't know exactly what was going to happen, or what it meant, no."

4. We have found no prior decision which deals directly with the effect of lack of knowledge of the consequences of a waiver of administrative remedies upon the exhaustion of remedies doctrine. Most nearly in point are United States v. Davis, 413 F.2d 148 (4th Cir. 1969); Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Wills v. United States, 384 F.2d 943 (9th Cir. 1967); and Glover v. United States, 286 F.2d 84 (8th Cir. 1961).
   In *Davis* failure to appeal was held not to bar an attack upon the classification order where the local board failed to inform defendant that an appeal agent was available to advise him of his legal rights, including his right of appeal, as required by Local Board Memorandum No. 82. Holding that the omission was prejudicial, the court said, "If an Appeal Agent does nothing more than advise a registrant that he may lose his right to contest his classification * * * in the district court by failure to administra-

The answer is to be found in a proper application of the doctrine conditioning judicial review of agency action upon the exhaustion of administrative remedies, a doctrine recently explored in the context of a Selective Service Act prosecution in McKart v. United States, 395 U.S. 185, 87 S.Ct. 1657, 23 L.Ed.2d 194 (1969), decided after the district court's ruling in this case.

McKart was exempted from service as the "sole surviving son of a family" in which the father had been killed while serving in the Armed Forces of the United States. 50 U.S.C. App. § 456(*o*). After the death of his mother, he was reclassified I–A by his local board on the theory that the statutory exemption ended when the family unit ceased to exist. He did not appeal, and the local board ordered him to report for induction. He failed to report. In his ensuing criminal prosecution, McKart sought to raise the defense that the order classifying him I–A was unlawful because he was entitled to exemption under section 456(*o*). The district court held that his failure to exhaust his appellate remedy within the Selective Service System barred him from challenging the validity of his classification. The Court of Appeals affirmed. The United States v. McKart, 395 F.2d 906 (6th Cir. 1968). The Supreme

Court reversed, holding that "application of the exhaustion doctrine would [not] be proper in the circumstances of the present case." McKart v. United States, *supra*, 395 U.S. at 197, 89 S.Ct. at 1664.

The Supreme Court first pointed out that if judicial review of the lawfulness of a classification order were barred in a criminal prosecution for refusing to submit to induction, that result would be imposed by the courts alone, and not by the Selective Service Act. *Id*. at 196–197, 89 S.Ct. 1657. This conclusion is supported by the Act's language and legislative history.

The statute bars *premature* resort to the courts while administrative remedies remain available to the registrant, but indicates that judicial review of the lawfulness of the registrant's classification *is* available "as a defense to a criminal prosecution * * * *after* the registrant has responded either affirmatively or negatively to an order to report for induction * * *." 50 U.S.C. App. § 460(b) (3) (1964 ed. Supp. III (emphasis added)). As the Senate Committee Report on the 1967 amendments states, "A registrant who presents himself for induction may challenge his classification by seeking a writ of habeas corpus after his induction. If the registrant does not submit to induction, he may raise as a defense to a

tively appeal, it would seem to be worthwhile." 413 F.2d at 151.

In *Powers* the court held that failure to appeal would be excused if the defendant were told by the local board "that the administrative remedy was not available *or that pursuit of it was not necessary* or should be delayed." 400 F.2d at 441 (emphasis added).

In *Wills* collateral attack was permitted though defendant had not appealed, where the local board failed to notify the defendant that he had been declared a delinquent, subject to immediate induction. The court held that such knowledge would "be relevant to appellant's decision whether to appeal, and the board's failure to disclose this fact at the proper time cannot be said to be without consequence to that decision." 384 F.2d at 946.

In *Glover* the court reviewed an unappealed classification order on the

ground that the local board did not inform defendant of the reason for issuing the order, which was identical to a previous classification order which had been appealed. The court stated, "Such knowledge was essential to an understanding of his rights and of the necessity of further action by him to enable him to properly exercise and protect his rights." 286 F.2d at 90.

*See also* Daniels v. United States, 372 F.2d 407, 414 (9th Cir. 1967), in which this court expressly reserved the question of whether a defendant would be deprived of due process of law by lack of notice that failure to report to the board for a civilian work assignment pursuant to a I–O classification would bar him from questioning the classification order in a prosecution for failing to report.

criminal prosecution the issue of the legality of the classification." S.Rep. No. 209, 90th Cong., 1st Sess., 10, *quoted* in Oestereich v. Selective Service System Local Board, 393 U.S. 233, 235 n.5, 89 S.Ct. 414, 422, 21 L.Ed.2d 402 (1969). Clearly, although "Congress could require * * * exhaustion [of appellate remedies] as a prerequisite to judicial review, see, *e. g.*, Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), * * * Congress has not chosen to do so." McKart v. United States, *supra*, 395 U.S. at 206, 89 S.Ct. at 1669 (concurring opinion of Justice White).

The Supreme Court also made it clear in *McKart* that the judicially assumed power to deny the right to present a defense to a criminal charge is to be used sparingly, and with great caution.

The reasons are evident. As the Court said: "[U]se of the exhaustion doctrine in criminal cases can be exceedingly harsh. The defendant is often stripped of his only defense; he must go to jail without having any judicial review of an assertedly invalid order. This deprivation of judicial review occurs not when the affected person is affirmatively asking for assistance from the courts but when the government is attempting to impose criminal sanction on him." *Id.* at 197, 89 S.Ct. at 1664.

Application of the doctrine in a Selective Service prosecution because the registrant had failed to appeal his classification would be particularly harsh. The Selective Service administrative process is highly involved,[5] and exposure to its complexities is a once-in-a-lifetime experience for each registrant. Yet the process is deliberately non-adversary—the registrant is encouraged to rely upon personnel of the System for assistance and advice, and is expressly denied the right to be represented by counsel.[6] Moreover, the agency's regulations state only that the registrant "may" appeal his classification to the state board,[7] and there is no intimation in the statute, in the regulations, or in any of the notices distributed to registrants, that failure to exercise the privilege of appeal may result in imprisonment—perhaps repeated imprisonment—for violation of an unlawful order.[8]

Despite the complex nature of this process, the assistance that the Selective Service System provides registrants is often illusory. The regulations authorize the appointment of advisors "to advise and assist registrants" (32 C.F.R. § 1604.41), but defendant states without contradiction that no such advisor had been appointed within his local board area, or, for that matter, anywhere in the State of California. The regulations also provide that each local board shall have an appointed government appeal agent whose duties include rendering at least some assistance to registrants (32 C.F.R. § 1604.71 (1969)), but the National Advisory Commission on Selective Service reports that at the time Lockhart was

---

5. For registrants "who find their claims disputed and denied by their local boards, and who must then use the various appellate procedures within the Selective Service System, and occasionally in the courts, to clarify their rights * * * the Selective Service System will often appear to be an administrative obstacle course, covered with more legal pitfalls and frustrations than anything they have ever encountered in the vastness of American bureaucracy." Comment, The Selective Service System: An Administrative Obstacle Course, 54 Calif.L.Rev. 2123, 2124 (1966).

6. 32 C.F.R. § 1624.1(b) (1969).

7. 32 C.F.R. § 1626.2(a).

8. The possibility of successive convictions and sentences for conscientious objectors who persist in their refusal to be inducted is raised by the proviso in 50 U.S.C. App. § 454(a), which states, "That, notwithstanding any other provision of law, any registrant who has failed or refused to report for induction shall continue to remain liable for induction and when available shall be immediately inducted." *See* White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Calif.L.Rev. 652, 658–659 (1968); Comment, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J.L. & Soc.Probs. 120, 155 (1968).

classified I–A and failed to appeal, these agents were "the most elusive components of the entire System." [9]

For these reasons, under the test enunciated in *McKart*, a registrant's defense to a Selective Service Act prosecution is not to be barred because of an administrative omission "unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon the registrant if he is denied review." McKart v. United States, *supra*, 395 U.S. at 197, 89 S.Ct. at 1664. The trial court must determine "whether there is  *  * a governmental interest compelling enough to outweigh the severe burden placed on petitioner." *Id.* Of course, the particular registrant's case is not to be viewed in isolation; the court "must also ask whether allowing all similarly situated registrants to bypass administrative appeal procedures would seriously impair the Selective Service System's ability to perform its functions." *Id.*

The Supreme Court suggested four reasons for the exhaustion doctrine which must be considered in determining whether, in a particular case, the governmental interest in applying the doctrine is sufficiently compelling to outweigh the heavy burden which its application would impose upon the defendant. They are: (1) that "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise"; (2) that the registrant's rights may be vindicated without the necessity for court intervention if he is required to pursue his administrative remedies; (3) that the agency should "be given a chance to discover and correct its own errors"; and (4) that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedure." *Id.* at 194–195, 89 S.Ct. at 1663.

The objectives implicit in these reasons for the exhaustion doctrine cannot be achieved as to defendant Lockhart and other registrants who have completed the administrative process. For them the administrative process is irrevocably closed—their administrative records cannot be supplemented; their classifications cannot be changed; the Selective Service System cannot correct its error, if any occurred, in their classifications; and these registrants cannot initiate administrative appeals, however strongly motivated they may be to do so.

---

9. The Commission report continues:

"The research team which reported the results of its intensive one-state study told the Commission: 'The clear fact is  *  *  * that appeal agents are almost totally inactive. Most board members barely know who their appeal agent is and cannot recall when he was last seen in the office. Clerks freely admit that their appeal agents have checked no files, seen no registrants, made no appeals in years. What advising of registrants there is, must be done by clerks or by an occasional private attorney. Most registrants are probably quite unaware that there are appeal agents in the System.' The Commission, on the evidence presented to it, shares that doubt. The condition appears to be uniform throughout the System—indeed, perhaps, it is its most uniform characteristic."

National Advisory Comm'n on Selective Service, Report 28–29 (1967).

Following publication of the Commission's report, the Director of the Selective Service System issued a Memorandum to Government Appeal Agents on March 6, 1967, which stated, in part:

"It has been reported to me that some registrants have been confused regarding their appeal rights, and the process of taking an appeal, and were not aware that a Government Appeal Agent was available to advise them. I have now issued a Local Board Memorandum which will require the local board to notify each registrant who is placed in either Class I–A, I–A–O, or I–O that this advice is available, giving the name of the Government Appeal Agent. If advice is sought, the local board clerk will arrange for a meeting."

Memorandum to Government Appeal Agents No. 1.

Denying judicial review to these registrants will further the objectives underlying the exhaustion doctrine only if it induces others who have not yet completed the administrative process to exhaust their administrative remedies when they would not otherwise do so. But this result could be achieved only if registrants were aware of that potential penalty at the time they were called upon to decide whether or not to appeal. And as observed earlier, there is no reason to believe that any substantial number of registrants *are* aware of the exhaustion doctrine and its implications. Registrants are charged with knowledge of the provisions of the statute and the regulations; but both treat administrative appeal as a right rather than as an obligation, neither suggests that failure to appeal will bar subsequent judicial review, and no notice of this consequence of failing to appeal is given to registrants by the agency. Absent such notice, barring registrants their defense is not merely unfair—it is wholly ineffectual.

In any case, it is all but fanciful to suppose that registrants will deliberately bypass their administrative appeal unless they are thereby barred from attacking their classifications in subsequent criminal prosecutions.

A registrant advised of his rights has several strong inducements to appeal an adverse classification by his local board. He cannot be inducted while the administrative appeal is pending. 32 C.F.R. §§ 1626.41, 1627.8. He may rectify omissions in the administrative record by submitting a written statement to the state board. 32 C.F.R. § 1626.12. The scope of the review by the state board is broad; that board is required to make a de novo determination of the classification question. 32 C.F.R. § 1626.26. Conscientious objectors have particularly good reason to seek review, for while many local boards are unreceptive to conscientious objector claims,[10] there is a strong possibility that the local board's determination will be reversed by the state board.[11] If the administrative appeal should fail, the registrant retains an unchallengeable right to judicial review in a subsequent criminal prosecution.[12]

The criminal prosecution, on the other hand, harbors little hope for the registrant. Judicial review of the local board's classification order is confined to the administrative record; no additional evidence may be received. Cox v. United States, 332 U.S. 442, 453–455, 68 S.Ct. 115, 92 L.Ed. 59 (1948). The scope of that review is extremely limited—"the narrowest known to the law," Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). The chance of success is correspondingly slight. And even a successful defense of a criminal prosecution exacts a heavy toll from all but the most hardened.

As the Supreme Court said in a similar context in *McKart*, "we doubt very much whether very many registrants would pass up the chance to escape service" by a successful appeal to the state board, "and leap immediately at the chance to defend a criminal prosecution." McKart

10. *See, e. g.,* National Advisory Comm'n on Selective Service, Report 29, 108–109; Rabin, Do You Believe in a Supreme Being—Administration of the Conscientious Objector Exemption, 1967 Wis.L.Rev. 642, 658, 668–670.

11. *See* Comment, Changes in the Draft, *supra* note 8, 4 Colum.J.L. & Soc.Probs. at 132–133. The Department of Justice recommended that exemption be granted in approximately 70 per cent of the conscientious objector cases that were appealed to the state boards. Report of the Task Force on the Structure of the Selective Service System VIII–3 (1967).

The Department's recommendations generally are followed. Comment, Changes in the Draft, 4 Colum.J.L. & Soc.Probs. at 150; Comment, Fairness and Due Process under the Selective Service System, 114 U.Pa.L.Rev. 1014, 1027 (1966).

12. The Supreme Court rejected the government's speculation "that many more registrants will risk criminal prosecution if their claims need not carry into court the stigma of denial not only by their local boards, but also by at least one appeal board." McKart v. United States, 395 U.S. 185, 199–200, 89 S.Ct. 1657, 1666, 23 L.Ed.2d 194 (1969).

v. United States, *supra*, 395 U.S. at 201, 89 S.Ct. at 1667.

One argument in favor of barring judicial review of the local board's denial of Lockhart's claim remains to be considered. It relates to the first of the four possible reasons for requiring exhaustion stated in *McKart*; namely, that "judicial review may be hindered by the failure of the litigants to allow the agency to make a factual record, or to exercise its discretion or apply its expertise." *Id.* at 194, 89 S.Ct. at 1663.

As we have shown, barring judicial review to Lockhart and others like him will not enable them to complete the administrative process, and it will not increase the number of other registrants who will do so in the absence of notice of this consequence; conversely, allowing Lockhart and others like him to attack the lawfulness of their classifications will not increase the number of registrants who bypass administrative review. It may be argued that judicial review should be denied nonetheless—either as a matter of comity due the agency as an independent entity, or because the registrant's failure to appeal may have prevented the agency from building a record which would have supported the correctness of its decision.[13]

We reject this argument for several reasons.

Forfeiture of judicial review on these grounds is appropriate only when the registrant has deliberately sought to subvert and evade the administrative process, and not when his default was merely inadvertent or negligent, as it was in the present case. The test to be applied is that of waiver—"an intentional relin-

quishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). The registrant may be denied judicial review of his classification only if he understandingly and knowingly forwent the privilege of seeking to vindicate his claim before the state board. As we stated in Donato v. United States, 302 F.2d 468, 470 (9th Cir. 1962), "This court's strict adherence to the rule that administrative remedies must be exhausted has been * * * in cases where failure to appeal appeared to be a deliberate and intentional rejection of the administrative review which had been provided." *See also* Badger v. United States, 322 F.2d 902, 906 (9th Cir. 1963).

The rule is closely analogous to that applied when a state prisoner petitions a federal court for habeas corpus after failing to appeal his state conviction. Fay v. Noia, 372 U.S. 391, 433–434, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In both situations the exhaustion requirement is imposed as a matter of choice, and not because the tribunal which imposes it lacks the power to act. In both its ordinary function is to *postpone* rather than to bar that tribunal's exercise of power. In both its purpose is to punish the litigant for his default and deter others who might commit similar defaults in the future. And in both the right which will be forfeited is a fundamental one. *Id.* at 420, 425, 432, 83 S.Ct. 822. The reasons which limit forfeiture of federal habeas corpus to instances in which there has been a deliberate and understanding waiver of a state court remedy apply equally to limit forfeiture of a registrant's defense to a criminal accusation

13. The Supreme Court raised the question whether this might not be true of cases involving conscientious objector claims. McKart v. United States, 395 U.S. at 198 n. 16, & 200, 89 S.Ct. 1657. However, the issue was deliberately left open. This is evident from the Court's language in the cited references, and from the Court's action in McNeil v. United States, 395 U.S. 463, 89 S.Ct. 2025, 23 L.Ed.2d 446 (1969). In *McNeil* the Court of Appeals had held that the defendant was barred from attacking his local board's denial of his conscientious objector claim because he had not taken an appeal to the state board. United States v. McNeil, 401 F.2d 527 (4th Cir. 1968). The Supreme Court granted certiorari, vacated the judgment of the Court of Appeals, and remanded for reconsideration in light of *McKart*.

to instances in which there has been a deliberate and understanding waiver of an administrative remedy.[14]

The record affirmatively establishes that Lockhart did not understandingly and knowingly forego administrative review of his classification "for strategic, tactical, or any other reasons that can fairly be described as the deliberate bypassing of [administrative] procedures." *Id.* at 439, 83 S.Ct. at 849. He did not "waive" his right to administrative review for he did not know what an "appeal" was,[15] or the consequences of relinquishing it.[16]

Moreover, although since-abolished procedures (described below) would have resulted in the development of a fuller administrative record if Lockhart had initiated an administrative appeal, it is *not* true that his failure to appeal precluded the Selective Service System from developing a record in support of its classification decision.

In the first place, a local board is not foreclosed from further inquiry when a registrant makes a prima facie written showing and fails to request a personal appearance. The local board has broad power to compel the registrants and others to appear and produce evidence, on its own initiative, and, if need be, may call upon the investigative facilities of the federal government for assistance. Dickinson v. United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1954).

In the second place, appellate review is not precluded by the registrant's failure to appeal his classification; the government appeal agent, who is required to be "equally diligent in protecting the interest of the Government and the rights of

14. These considerations were outlined by Justice Brennan in Fay v. Noia:

"We fully grant * * * that the exigencies of federalism warrant a limitation whereby the federal judge has the discretion to deny relief to one who has deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts. Surely no stricter rule is a realistic necessity. A man under conviction for crime has an obvious inducement to do his very best to keep his state remedies open, and not stake his all on the outcome of a federal habeas proceeding which, in many respects, may be less advantageous to him than a state court proceeding. See Rogers v. Richmond, 365 U.S. 534, 547–548, 81 S.Ct. 735, 742–743, 5 L.Ed.2d 760. And if because of inadvertence or neglect he runs afoul of a state procedural requirement, and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in this Court, those consequences should be sufficient to vindicate the State's valid interest in orderly procedure. Whatever residuum of state interest there may be under such circumstances is manifestly insufficient in the face of the federal policy * * * of affording an effective remedy for restraints contrary to the Constitution." Fay v. Noia, 372 U.S. at 433–434, 83 S.Ct. at 846.

Similarly, loss of the benefit of the administrative remedy should be suffi-

cient to vindicate the valid interest of the Selective Service System in orderly procedure; whatever remaining interest the agency may have is manifestly insufficient to justify the practical denial of a registrant's sole defense to a criminal prosecution for refusing induction.

15. The fact that the registrant understood the nature of his right to an administrative appeal is emphasized in many cases. *See, e. g.,* Edwards v. United States, 395 F.2d 453, 454–455 (9th Cir. 1968); DuVernay v. United States, 394 F.2d 979, 980 (5th Cir. 1968), aff'd 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); Magee v. United States, 392 F.2d 187, 188–189 (1st Cir. 1968); Evans v. United States, 252 F.2d 509, 511 (9th Cir. 1958).

The district court rejected allegations of lack of knowledge of this right as factually untrue in Greiff v. United States, 348 F.2d 914, 915 (9th Cir. 1965), and Woo v. United States, 350 F.2d 992, 995 (9th Cir. 1965). No such finding was made in the case before us.

16. Knowledge of the consequences of foregoing a privilege is essential to a finding of waiver for "it is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege." Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

the registrant in all matters," 32 C.F.R. § 1604.71(d) (5), is expressly authorized to "appeal to an appeal board from the classification of a registrant by the local board." 32 C.F.R. § 1626.2(b).

Since the government had ample authority to initiate steps which would have led to the development of a fuller administrative record, there is no justification for sustaining the local board's arbitrary rejection of the defendant's prima facie claim based upon an uncontroverted showing,[17] simply because the defendant failed to take an administrative appeal.

Finally, it should be noted that the 1967 amendments to the Selective Service Act eliminated the only substantial possibility that a record supporting rejection of a conscientious objector claim might be developed on appeal. Prior to those amendments the Department of Justice was required to conduct an inquiry and hearing whenever a registrant appealed a local board's denial of a conscientious objector claim, and the appeal board tentatively determined that he was not entitled to a I–O or lower classification. 50 U.S. C. App. § 456(j) (1964); 32 C.F.R. § 1626.25 (1967). This provision was repealed by section 7 of the Act of June 30, 1967, Pub.L. No. 90–40, 81 Stat. 104. Under the present law, there is no Department of Justice inquiry or hearing, the appeal to the state board is confined to the record before the local board,[18] and the registrant may not appear or be represented by counsel. Nothing is added to the rationality of judicial review by forcing registrants to complete such an administrative appellate process as this.

We conclude that in the circumstances of this case the defendant was not barred from attacking the lawfulness of his clas-

sification, his classification was unlawful because it was without basis in fact, and the judgment of conviction therefore should be reversed.

---

17. At trial defendant was asked, "Did they [the local board] ever call you in to clarify anything?" He answered, "No."

18. There is one exception. The appeal board may consider "[g]eneral information concerning economic, industrial and social conditions." 32 C.F.R. § 1626.24 (b) (2).

As we noted earlier, the registrant is permitted to file a written statement with the appeal board in which he "may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file." 32 C.F.R. § 1626.12.